**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**George KHOURY, Defendant–Appellant.**

**No. 94–50394.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 1995.

Decided Aug. 3, 1995.

Michael J. McCabe, San Diego, CA, for defendant-appellant.

Amalia L. Meza, Asst. U.S. Atty., and Marietta I. Geckos, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: McKAY,* REINHARDT, and FERNANDEZ, Circuit Judges.

* The Honorable Monroe G. McKay, Senior United States Circuit Judge for the Tenth Circuit, sitting by designation.

Opinion by Judge McKAY; Partial Concurrence and Partial Dissent by Judge FERNANDEZ.

McKAY, Circuit Judge:

Appellant, George Khoury, after revoking an earlier plea agreement, was convicted in a jury trial of manufacturing methamphetamine and sentenced to 188 months. He raises two issues on appeal.

On October 31, 1990, Mr. Khoury, along with several co-conspirators, was indicted on drug charges. On January 14, 1992, Mr. Khoury entered into a plea agreement in which he agreed to cooperate with the authorities. Paragraph 10 of the plea agreement acknowledged, "Defendant has already provided information to the Government that has led to the arrest of a fugitive." In its presentence report, the probation department calculated Mr. Khoury's guideline range of 235 to 293 months and recommended a sentence at the high end of the range. At sentencing, the government made a U.S.S.G. § 5K1.1 substantial assistance motion. The sentencing judge exercised his discretion, granted the motion, and departed downward, sentencing Mr. Khoury to 144 months.

A few weeks before being sentenced, Mr. Khoury moved to withdraw his guilty plea. This motion was denied. After sentencing, he appealed this denial. Before the appeal was heard, the government, by stipulation, agreed to allow Mr. Khoury to withdraw his plea and remand to the district court. Although the government offered to sweeten the deal by recommending a one-year sentence reduction if Mr. Khoury would again plead guilty, Mr. Khoury insisted on going to trial. The trial proceeded smoothly except for one incident.

On the morning of the third day of trial, at 8:15 a.m., the trial judge received a phone call from one of the jurors. The juror stated that his daughter was ill with chicken pox and requested to be excused. As neither

party was present, the judge had to respond on his own. Since the emergency appeared to be legitimate, the judge excused the juror. When the trial resumed later that morning, the judge explained to the parties what had happened and stated that he was replacing the juror with the alternate. The government then concluded its case, calling its final two witnesses.

At this point, defense counsel raised an objection to the judge's decision to excuse the juror without consulting counsel beforehand. The judge noted the objection, but allowed the jury to go forward with its deliberations. The jury returned a guilty verdict.

At the sentencing hearing, defense counsel requested that the government again make a § 5K1.1 motion for downward departure. The government refused. Defense counsel then argued that the court should depart downward on its own motion because the government's refusal to make the motion was improper. The court declined this request and sentenced Mr. Khoury to 188 months.

Mr. Khoury raises two issues on appeal. First, did the district court err by excusing the juror, seating the alternate, and resuming the trial without consulting the defendant and his counsel? Second, did the district court err in failing to depart downward when the government refused to renew its § 5K1.1 substantial assistance motion?

In answer to the first question, the government has suggested that the defendant has waived any possible objection by not objecting in a timely fashion. This argument is not without merit. Although the defendant claims to have objected at the first available opportunity, the facts belie this contention. Counsel did not object when the judge first informed the parties of his actions, but rather waited until after the government had closed its case. However, we need not resolve this quarrel because the objection, whether timely or not, is not well-taken.

 *United States v. Patterson,* 819 F.2d 1495 (9th Cir.1987), plainly controls this case. In *Patterson,* the same argument was raised and rejected after a juror was excused for a death in the family. *Id.* at 1506–07. Also directly on point is *United States v.*

*Lustig,* 555 F.2d 737, 745–46 (9th Cir.), *cert. denied,* 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977), which establishes that a judge's dismissal of a juror without consulting defense counsel is within the judge's discretion and is not grounds for reversal unless prejudice is demonstrated. *See id.* Mr. Khoury has failed to address how he possibly could have been prejudiced by having the alternate juror, whom he had approved, seated. Instead, he claims prejudice should be presumed, contrary to Ninth Circuit precedent. *See id.* at 746. This claim is rejected.

The second issue is much more substantial. Mr. Khoury argues that the government refused to make a § 5K1.1 motion in retaliation for his choice to exercise his constitutional right to a jury trial. The record supports this contention. In the "Government's Sentencing Memorandum" the government states, "After the remand, the Government sent a letter to defense counsel ... offering to resolve the case ... whereby the Government agreed to recommend a 1–year reduction of Khoury's sentence if Khoury agreed to plead guilty again.... The Government advised that if the offer was [sic] not accepted, and Khoury withdrew his plea, the Government intended to present additional charges to the Grand Jury and *would not recommend any reduction.*" Excerpts of Record at 78–79 (emphasis added). At the hearing on appeal, the government conceded that they were referring specifically to the § 5K1.1 motion in this letter.

 While it is undoubtedly true both that the government does not have to make a substantial assistance motion every time a defendant is cooperative and that the government may use the motion as a carrot to induce a defendant to make a plea, that is not what transpired in this case. Here, the government initially took the position at sentencing that the defendant had offered substantial assistance and made the appropriate motion, and *then* threatened to change its position to discourage the defendant from going to trial. The question is whether this action was proper.

 The government contends that the district court's decision not to depart downward is not subject to review on appeal. While it is certainly the rule in this Circuit that a district court's discretionary refusal to depart downward when a § 5K1.1 motion is made is not reviewable, it must be clear from the sentencing hearing transcript that the district court knew it had the legal authority to depart downward under § 5K1.1. *United States v. Hanna,* 49 F.3d 572, 576 (9th Cir. 1995). If it appears that the district court may have believed that it did not have such discretion, the appropriate remedy is a remand to exercise its discretion. *United States v. Morales,* 972 F.2d 1007, 1011 (9th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993).

 In this case, we believe that the cases support the proposition that the sentencing court did have discretion to depart downward on its own motion. In *Wade v. United States,* 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), the Supreme Court held:

[F]ederal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive.

Thus, a defendant would be entitled to relief if a prosecutor refused to file a substantial assistance motion, say, because of the defendant's race or religion.

*Id.* at 185–86, 112 S.Ct. at 1843–44. Mr. Khoury argues that penalizing him for exercising his right to a jury trial is just such an unconstitutional motive. Indeed, the Third Circuit has held exactly that.

In *United States v. Paramo,* 998 F.2d 1212 (3rd Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1076, 127 L.Ed.2d 393 (1994), the defendant Paramo and two co-conspirators were indicted on mail fraud and money laundering charges. The government offered all three an opportunity to enter into plea agreements. "In return for cooperating with the government and pleading guilty to the charges against them, the government offered to file a motion for downward departure at sentencing pursuant to section 5K1.1." *Id.* at 1215. Although all three had agreed to cooperate and had already offered

statements, only Mr. Paramo's two co-conspirators took the deal. Mr. Paramo refused to plead guilty because he believed the statute did not apply to his conduct. *Id.* The government made the motion on behalf of the co-conspirators, and they received eighteen and twenty-four months, respectively. Mr. Paramo was found guilty, no § 5K1.1 motion was made, and Mr. Paramo received forty-six months. Mr. Paramo argued that the refusal to file a § 5K1.1 motion was prosecutorial vindictiveness in retaliation for going to trial. The government countered this claim, stating:

Paramo's assistance was not substantial compared with the assistance given by the [co-conspirators], because Paramo agreed to proffer a statement only after the others had given complete statements admitting their roles in the crimes.... Paramo also gave a conflicting account of the division of proceeds and failed to give significant aid in locating another alleged co-conspirator.

*Id.* at 1220–21. Despite this strong evidence, the court held that Mr. Paramo should be given an opportunity to show that such claims were pretextual and that the real reason no motion was filed was prosecutorial vindictiveness. Thus, the court remanded to the district court. *See id.*

The Ninth Circuit has recently adopted the analysis of *Paramo. See United States v. Treleaven,* 35 F.3d 458 (9th Cir.1994). In that case, the defendant demonstrated that he had provided substantial assistance and that the government had engaged in "potentially unconstitutional behavior," thereby possibly depriving him of the chance to get a § 5K1.1 downward departure. Under these circumstances, the Ninth Circuit held that "the government's behavior in this case authorizes the district court to grant [his] request for a downward departure for providing substantial assistance." *Id.* at 462. Thus, the *Treleaven* court remanded to give the district court the opportunity to depart downward in its own discretion. *Compare United States v. De La Fuente,* 8 F.3d 1333 (9th Cir.1993).

 The government appears to have confused the issues by citing authority to the

effect that a court is free to give a defendant a longer sentence after a trial than he had been previously given under a guilty plea. While this is undoubtedly true, *see Alabama v. Smith*, 490 U.S. 794, 798–802, 109 S.Ct. 2201, 2204–06, 104 L.Ed.2d 865 (1989); *Taylor v. Kincheloe*, 920 F.2d 599, 607 (9th Cir. 1990), this is simply not the issue in this case. Nevertheless, for the purpose of clarity, we note that, to the extent that Mr. Khoury argues that the sentencing judge may not sentence him in excess of the original 144–month sentence, this argument is without merit.

The government also attempts to make the argument the prosecution made in *Paramo:* that Mr. Khoury did not actually provide substantial assistance. This claim is incredible in light of this record; the government has already made such a motion once, and they signed an agreement which stated that Mr. Khoury's assistance had aided them in arresting a fugitive. *See* Excerpts of Record at 10. By now claiming that Mr. Khoury has not in fact provided substantial assistance, they are stating, in effect, that they lied to the court when they made the original § 5K1.1 motion.

The government attempts to justify this disingenuous argument by claiming that it "had an opportunity to learn more about the Appellant than was known at the time of Appellant's plea years ago." Appellee's Brief at 17. In essence, they claim to have discovered during the trial that Mr. Khoury is an especially unsavory character, and that he is unreliable. Thus, they assert that they would never call him as a witness. While this may be true, the letter sent by the government to Mr. Khoury plainly indicates that the government decided not to move for a sentence reduction before Mr. Khoury went to trial. Thus, this seems like a post hoc rationalization. Furthermore, a substantial assistance motion is based not on future assistance but on assistance already provided. The government has offered no evidence to suggest any changed circumstances that would render insubstantial what they had previously perceived to be substantial assistance.

Mr. Khoury has presumptively established that the government has withdrawn its § 5K1.1 motion because he forced them to go to the trouble of proving their case before a jury, as was his constitutional right. The government has pointed to no intervening circumstances that diminished the usefulness of what they previously considered to be substantial assistance. We therefore conclude that Mr. Khoury has made the "substantial threshold showing" required by *Wade*. *See* 504 U.S. at 186, 112 S.Ct. at 1844; *see also Treleaven*, 35 F.3d at 460–61. Hence, the district court had the authority to make a departure on its own motion. The court did not, in fact, choose to depart. Thus, the only question that remains is whether the district court was aware that it had the authority to depart downward.

■ The transcript of the sentencing hearing supports Mr. Khoury's contention that the sentencing court did not believe it had the discretion to depart, as the following passage illustrates:

COUNSEL: Well, I'm going to request that the Court can make its own motion under Section 5(K)(1.1) and depart on that basis.

THE COURT: I'd have to find that the recommendation is in bad faith, and that [government counsel] refuses to make it in bad faith, and I'm not going to find bad faith on the part of the Government in this case.

Sentencing Transcript at 13 (June 27, 1994). This passage demonstrates that the court believed it could depart downward only if it made a finding of bad faith. Since it did not make such a finding, it follows that the court believed it did not have the discretion to depart downward. However, "bad faith" is not the relevant standard; although the government may have in good faith believed they could refuse to make a § 5K1.1 motion, it is their unconstitutional motive for doing so which allows the district court to act on its own.

■ The government argues that a remand is unnecessary because it is clear from other passages that, given the opportunity to depart, the judge would decline. The passages to which they refer are, at best, ambig-

uous. In light of the fact that the same court has previously exercised its discretion to grant a downward departure, we will not lightly presume, absent compelling evidence, that it would not do so again. Thus, we hereby REMAND to the district court to exercise its discretion and consider the appropriate Guideline factors relating to a § 5K1.1 motion.

AFFIRMED in part, REVERSED in part, and REMANDED.

FERNANDEZ, Circuit Judge, concurring and dissenting:

I agree that the district court did not err when it replaced one juror with an alternate. However, I do not agree that the government was vindictive and that the district court might well have departed if the government had made a motion to depart.

While it can be argued that the government walked close to the line, I cannot agree that its failure to make a departure motion vindictively penalized Mr. Khoury for exercising his trial rights. It seems obvious to me that every plea bargaining suggestion asks the defendant to give up his trial rights in exchange for something else. Mr. Khoury now argues that the something else cannot be a refusal to make a downward departure motion. Perhaps in some circumstances that would be true. However, as the government has pointed out, Mr. Khoury's activities—such as intimidating witnesses—made his cooperation rather useless. It is particularly noteworthy that even when it was bound by the plea agreement and made a departure motion the government argued for a 17–year sentence. Even now, Mr. Khoury's sentence is less than 17 years. I would reject Mr. Khoury's suggestion that he should get the benefit of his plea bargain.

More to the point, it appears to me that there certainly can be no viable claim of vindictiveness made against the district court. Vindictiveness cannot be presumed, and here the district court quite clearly pointed out that it had "learned a lot more about Mr. Khoury through the course of the trial than [it] knew when [it] sentenced him to 144 months...." *See Alabama v. Smith,* 490 U.S. 794, 801–02, 109 S.Ct. 2201, 2205–06, 104 L.Ed.2d 865 (1989); *Taylor v. Kincheloe,* 920 F.2d 599, 607 (9th Cir.1990). Mr. Khoury says that the court could not know more, but it is obvious that listening to a trial is an enriching experience which almost inevitably gives the court a more accurate feeling for the defendant and his crimes.

Moreover, the district court made it very clear that it was well satisfied with the sentence it imposed upon Mr. Khoury. It did not, as courts sometimes do, lament its inability to reduce the sentence below the Guideline range. It recognized that whether a § 5K1.1 motion was made or not, it had discretion to refuse to depart, stated it was not required to give Mr. Khoury the lower sentence he received the first time, and pronounced itself satisfied that "[u]nder the facts of this case ... that's a fair sentence." *Cf. United States v. Reyes–Alvarado,* 963 F.2d 1184, 1189–90 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 258, 121 L.Ed.2d 189 (1992); *United States v. Koenig,* 952 F.2d 267, 274 (9th Cir.1991).

The Guidelines sometimes seem like the Hydra, but we need not make them even more frightening by wielding our swords in a way that forces a district court to face two heads where only one confronted it before. Each time we require district courts to place more of their thinking on the record (or suffer reversal) we multiply their problems. Sometimes we must; this time we needn't.

Therefore, I respectfully dissent from the determination to reverse Mr. Khoury's sentence.