**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert MURPHY, Defendant–Appellant.**

**No. 94–10233.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 1995.

Decided Sept. 7, 1995.

---

Michael J. Holston, Drinker, Biddle & Reath, Philadelphia, PA, for defendant-appellant.

Robert A. Bork, Assistant United States Attorney, Reno, NV, for plaintiff-appellee.

Before: BRUNETTI, THOMPSON and HAWKINS, Circuit Judges.

Opinion by Judge BRUNETTI; Concurrence by Judge HAWKINS.

BRUNETTI, Circuit Judge:

Robert Murphy appeals his conviction and sentence for violations of the Clean Air Act, 42 U.S.C. §§ 7412–7413, and the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9603, and for making false statements to government agents, in violation of 18 U.S.C. § 1001. He claims that the district court improperly admitted the testimony of his former wife at trial. He also claims that the district court erroneously concluded that it lacked authority to depart downward from the Sentencing Guidelines pursuant to U.S.S.G. § 5K1.1. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEEDINGS BELOW

In 1992, federal authorities began investigating the illegal disposal of asbestos at an apartment complex owned by Murphy in Reno, Nevada. Thomas Devins, who worked for Murphy at the complex, provided the authorities with a sworn statement admitting that he and Murphy had illegally disposed of asbestos. Soon after providing the statement, Devins fled to Florida. In January, 1993, when the investigation of the crime had been completed, Devins contacted Murphy and offered to get him "off the hook." Murphy in turn contacted the authorities and offered to assist in the apprehension of Devins.

His then attorney, Lawrence Semenza, negotiated a cooperation agreement with the authorities. Both sides agreed that if Murphy were prosecuted, no tape recordings of contact between Murphy and Devins would be used at trial. The government also agreed to inform the court of Murphy's assistance in apprehending Devins. However, the parties did not discuss the possibility of the government filing a motion pursuant to U.S.S.G. § 5K1.1, which allows for departure from the Sentencing Guidelines based upon a defendant's substantial assistance to the authorities. Semenza testified before the district court that he did not believe discussion of a § 5K1.1 was appropriate at that stage because Murphy had not yet been indicted. He testified that at the time he believed that the government would promise nothing more than what it had already promised in exchange for Murphy's cooperation.

As part of that agreement, the authorities taped several conversations between Devins and Murphy during which Devins offered Murphy a statement exonerating him in exchange for $75,000. On January 15, 1993, Devins faxed Murphy a proposed written statement. Murphy persuaded Devins to travel to Reno in order to exchange the statement for the money. On January 19, Devins met Murphy at a casino in Reno, but became suspicious of surveilling FBI agents and left the casino. On January 20, Devins called Murphy and arranged another meeting for later that day. Immediately after that meeting, FBI agents apprehended Devins, and he was ultimately convicted of crimes similar to Murphy's.

Soon thereafter, Murphy and the government initiated plea negotiations. The government proposed that Murphy plead guilty to one count and accept various Sentencing Guidelines enhancements. The government stated that if Murphy accepted the proposal, it would file a motion in the district court explaining that Murphy had provided substantial assistance in the investigation and prosecution of another person, and requesting that the court depart downward from the Sentencing Guidelines pursuant to § 5K1.1. The government's proposal resulted in an offense level potentially as low as twelve. The government stated that if Murphy did not accept the proposal, it would not file a § 5K1.1 motion. Murphy rejected the proposal because it required that he accept a two level enhancement for obstruction of justice. The negotiations continued, but no agreement was reached, and the entire case was set for trial.

Prior to trial, Murphy filed a motion in limine to prevent his former wife from testi-

fying about an alleged admission of guilt that he made to her while they were still married. Murphy claimed that the marital communications privilege required exclusion of that testimony. The district court denied his motion.

A jury convicted Murphy of eighteen counts of various environmental crimes. The government did not move for a § 5K1.1 departure, and the district court refused to grant such a departure upon Murphy's motion. The court found that Murphy did in fact provide substantial assistance to the government in the apprehension of Devins. However, the court concluded that absent a government motion, it lacked the authority to grant a departure, because the government had not violated Murphy's due process rights by refusing to file a motion.

The court determined that Murphy's total offense level was eighteen, and, pursuant to U.S.S.G. § 3C1.1, added a two level enhancement for obstruction of justice. The total offense level of twenty yielded a sentencing range of thirty-three to forty-one months. The court sentenced Murphy to thirty-three months in prison. Murphy timely appeals.

## ANALYSIS

### I. Admissibility of the Testimony of Murphy's Former Wife.

■ Murphy argues that the testimony of his now former wife, Karen Kincannon, was inadmissible because she testified about statements that he made to her in confidence while they were still married. Federal Rule of Evidence 501 provides that the privilege of a witness is governed by the principles of the common law as interpreted by the federal courts. We recognize a marital communications privilege, but construe it narrowly because it obstructs the truth-finding process. *United States v. Marashi*, 913 F.2d 724, 730 (9th Cir.1990). That privilege does not apply if the couple was separated and the marriage was irreconcilable at the time of the communication. *United States v. Roberson*, 859 F.2d 1376, 1381 (9th Cir.1988). Separation and irreconcilability are questions of fact determined by the district court. *Id.*

■ In this case, it is undisputed that Murphy and Kincannon were separated when the relevant communication occurred. The district court found that the marriage was also irreconcilable at that time. Accordingly, it concluded that the privilege did not apply, and that the testimony was admissible. We review for an abuse of discretion a district court's decision on the admissibility of evidence that involves factual determinations. *United States v. Wood*, 943 F.2d 1048, 1055 n. 9 (9th Cir.1991).

■ Several factors guide a court's determination whether a marriage is irreconcilable. Those factors include the duration of the separation, the stability of the marriage at the time of the communication, whether a divorce action had been filed and the conduct of the parties since that filing, whether a property settlement had been proposed, and, finally, any statements by the parties regarding irreconcilability or the reasons for separation. *Roberson*, 859 F.2d at 1381.

■ In this case, the relevant communication occurred in the spring of 1992. At that time, Murphy and Kincannon had been separated for seven years. At the time of separation, Murphy told Kincannon that they would get back together once they finalized a postnuptial agreement. However, after they finalized such an agreement in 1987, the couple did not get back together, and Murphy told Kincannon that he did not want to be married to her. In April 1991, Murphy filed for divorce. After that time, the couple continued to work in the same office, occasionally socialized, and attended marriage counseling. However, Murphy persistently made it clear to Kincannon that he wanted to get divorced. Adjudication of the divorce was originally scheduled for March 1992, approximately the time of the relevant communication, but was delayed pending the settlement of a Federal Trade Commission charge against the couple's jointly held company. In December 1992, the divorce was finalized.

Virtually all of the *Roberson* factors support the district court's finding that this marriage was irreconcilable at the time of the communication. The district court did not abuse its discretion by concluding that the marital communications privilege did not ap-

ply, and that Kincannon's testimony was therefore admissible.

## II. Refusal to Depart Downward.

■■■ United States Sentencing Guidelines § 5K1.1 provides:

Upon a motion of the government stating that the defendant has provided substantial assistance in the investigation of another person who has committed an offense, the court may depart from the guidelines.

A district court generally lacks the authority to grant a downward departure pursuant to this section absent a motion by the government. *United States v. Shrewsberry*, 980 F.2d 1296, 1297 (9th Cir.1992), *cert. denied*, ─── U.S. ───, 114 S.Ct. 120, 126 L.Ed.2d 84 (1993). This section grants the government the discretion, but does not impose a duty, to move for a departure when the defendant has rendered substantial assistance. *Wade v. United States*, 504 U.S. 181, 185, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524 (1992). However, the government cannot refuse to file such a motion on the basis of an unconstitutional motive (e.g., racial discrimination), or arbitrarily (i.e., for reasons not rationally related to any legitimate governmental interest). *United States v. Burrows*, 36 F.3d 875, 884 (9th Cir.1994) (citing *Wade*, 504 U.S. at 185–86, 112 S.Ct. at 1843–44). If the government has so refused, the district court has authority to depart downward. *United States v. Treleaven*, 35 F.3d 458, 462 (9th Cir.1994).

■■■ In this case, the district court determined that the government neither had such an unconstitutional motive nor acted arbitrarily. It therefore concluded that it lacked authority to depart downward. We review the legality of its sentence de novo. *See United States v. Delgado–Cardenas*, 974 F.2d 123, 126 (9th Cir.1992). However, we review its factual findings concerning the government's reasons for refusing to file a § 5K1.1 motion for clear error. *See Burrows*, 36 F.3d at 884.

At the outset, it is important to clarify the issues not raised by this case. On the one hand, the government does not claim that Murphy's assistance in apprehending Devins was insufficient to justify a § 5K1.1 motion.

*See Burrows*, 36 F.3d at 884 (the prosecution, not the court, decides whether the quantum of assistance was substantial enough to file a motion). On the other hand, Murphy cannot claim that the government failed to fulfill any promise it made, thereby entitling him to specific performance. *See Treleaven*, 35 F.3d at 462. At the time of the initial agreement, the government promised that in exchange for Murphy's assistance, it would make that assistance known to the sentencing court. The government fulfilled that promise by describing Murphy's assistance to the probation officer, who in turn described it to the court. The possibility of a § 5K1.1 motion was only discussed later during plea negotiations, which ultimately broke down.

■■■ The issue in this case is whether the government refused to file a § 5K1.1 motion in order to punish Murphy for exercising his Sixth Amendment right to jury trial. Such a vindictive purpose would be an unconstitutional motive. *See Treleaven*, 35 F.3d at 461 (dicta); *United States v. Paramo*, 998 F.2d 1212, 1219 (3rd Cir.1993), *cert. denied*, ─── U.S. ───, 114 S.Ct. 1076, 127 L.Ed.2d 393 (1994); *United States v. Easter*, 981 F.2d 1549, 1555 (10th Cir.1992) (dicta), *cert. denied*, ─── U.S. ───, 113 S.Ct. 2448, 124 L.Ed.2d 665 (1993). *See also United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.") (quotations omitted). We conclude that Murphy has not provided sufficient evidence to demonstrate that the government had such an unconstitutional motive.

■■■ As an initial matter, we reject Murphy's argument that a presumption that the government acted vindictively applies in this case. Such a presumption applies when, after a defendant has successfully appealed his initial conviction, a judge imposes a harsher sentence upon retrial or a prosecutor brings more serious charges upon reindictment. *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). However, the "likeli-

hood of vindictiveness" is not as great in a case such as this, which involves no retrial. *Goodwin,* 457 U.S. at 376–77, 102 S.Ct. at 2490. Furthermore, such a presumption is not appropriate in a case such as this, when, during the "give and take" of plea negotiation, a defendant has bargaining power. *Id.* at 377–80, 102 S.Ct. at 2490–92. Accordingly, the Supreme Court has established that no presumption of vindictiveness applies to a prosecutor's decision to indict on more serious charges after a defendant has refused a plea bargain. *Id.* at 381–84, 102 S.Ct. at 2492–94. Likewise, we conclude that no such presumption applies to a prosecutor's decision not to file a § 5K1.1 motion after a defendant has refused a plea bargain. Murphy must present objective evidence that the decision was motivated by a desire to punish him for exercising his right to trial. *Id.* at 384, 102 S.Ct. at 2494.

■ Murphy has only presented evidence that the government threatened to withhold a § 5K1.1 motion if he rejected its proposed plea, and that it later carried out that threat. This evidence alone does not satisfy Murphy's burden.

In *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), during plea negotiations, the prosecutor offered to recommend a sentence of five years imprisonment in exchange for a guilty plea, but threatened to indict the defendant on an additional charge punishable by life imprisonment if the defendant refused the plea. *Id.* at 358–59, 98 S.Ct. at 665–66. When the defendant refused, the prosecutor carried out the threat, obtained a conviction on the additional charge, and the defendant was sentenced to life. *Id.* at 359, 98 S.Ct. at 666.

The Supreme Court stated that plea bargaining, by its nature, necessarily deters a defendant from exercising his right to trial. *Id.* at 362–64, 98 S.Ct. at 667–68. The Court held that as long as the defendant was free to accept or reject the prosecution's offer, there was no impermissible retaliation or punishment when the prosecution carried out its threat to increase the charge. *Id.*

While *Bordenkircher* involved a prosecutor's charging decision, its reasoning applies to this case. The government may offer either reduced charges or its recommendation of a lenient sentence as an inducement for the defendant to plead guilty. *Alabama v. Smith,* 490 U.S. 794, 802, 109 S.Ct. 2201, 2206, 104 L.Ed.2d 865 (1989). Furthermore, both the government's charging decision and its decision whether to file a § 5K1.1 motion are largely discretionary. *Bordenkircher,* 434 U.S. at 364, 98 S.Ct. at 668; *Wade,* 504 U.S. at 185, 112 S.Ct. at 1843. Therefore, like the government's enforcement of its plea bargain threat to deny a reduced charge, the government's enforcement of its plea bargain threat to withhold a § 5K1.1 motion does not demonstrate unconstitutional retaliation against the defendant's exercise of his right to trial. *See Paramo,* 998 F.2d at 1221 (in order to prove prosecutorial vindictiveness, defendant cannot rely solely on government's withdrawal of § 5K1.1 motion in response to defendant's refusal to plea). The district court did not err by concluding that Murphy failed to prove an unconstitutional motive.[1]

■ We also conclude, for reasons similar to those described above, that the government's decision to withhold a § 5K1.1 motion was not arbitrary under *Wade,* 504 U.S. at

---

1. Our decision does not conflict with *United States v. Khoury,* 62 F.3d 1138 (9th Cir.1995). In that case, the majority stated:

   While it is undoubtedly true both that the government does not have to make a substantial assistance motion every time a defendant is cooperative and that the government may use the motion as a carrot to induce a defendant to make a plea, that is not what happened in this case. Here the government initially took the position at sentencing that the defendant had offered substantial assistance and made the appropriate motion, and *then* threatened to change its position to discourage the defendant from going to trial.

*Id.* at 1140 (emphasis in original). The government then actually did change its position before the district court. *Id.* at 1139. The majority in *Khoury* concluded that under the unique circumstances of that case, the district court had authority to depart downward. *Id.* at 1141. *But see id.* at 1143 (Fernandez, C.J., dissenting). In Murphy's case on the other hand, the government did only what the *Khoury* majority said it "undoubtedly" could do: it offered Murphy a § 5K1.1 motion during negotiations in an attempt to induce his plea.

186, 112 S.Ct. at 1844. Maintaining the effectiveness of the plea negotiation process is a legitimate governmental interest. Enforcing threats made during that process is rationally related to advancing that interest. *See United States v. Maddox,* 48 F.3d 791, 796–97 (4th Cir.1995) (government could offer a § 5K1.1 motion to whichever defendant pled first, and deny it to the second, in order to expedite the plea bargaining process).

Because the government filed no downward departure motion, and because the government withheld that motion neither arbitrarily nor on the basis of an unconstitutional motive, the district court properly concluded that it lacked authority to depart downward from the sentencing guidelines under § 5K1.1.

**AFFIRMED.**

MICHAEL DALY HAWKINS, Circuit Judge, concurring:

I concur in the result reached here because apparently no power on earth can compel a prosecutor to move for a downward departure, even where a suspect approaches the government before being indicted, promises to cooperate, engages in potentially dangerous undercover activities which result in the capture of another, and is later found by the court to have fully performed on his promises of cooperation.

While it is technically correct that the government did not specifically promise to move for a downward departure, its argument that it lived up to its promise to bring Murphy's cooperation to the attention of the sentencing court—by telling the probation office what he had done—rings slightly hollow. Under the Sentencing Guidelines, only a government motion could have brought this defendant's extraordinary cooperation to the court's attention in a meaningful way.

In his discussions with the government, Murphy did not demand a commitment for a departure motion because, as both sides now agree, it would have been futile. When he tried to achieve the same result after the government had his cooperation in hand, they demanded that he stipulate to something he could not in good conscience do:

concede that his conduct prior to cooperating amounted to obstruction of justice. Murphy even offered at this point to submit that dispute for binding determination by the court, but the government refused to agree.

In the end, the government probably did exactly what it was required to do and nothing more. In doing so, it "rewards" a cooperating defendant who performs according to his promises in good faith with its smug silence at sentencing. In the rough and tumble world of plea negotiations, perhaps it is wrong to expect more. But as a non-legal commentator once observed: rules of ethics should govern the area between what one can do and what one ought to do. Government lawyers, who may one day find their own clients on the receiving end of perfectly legal, but sharp practices, might well reflect on this.