UNITED STATES of America, Plaintiff

v.

David Neel SCHOLZ, Defendant.

No. CR–N–94–0075–ECR.

United States District Court,
D. Nevada.

Nov. 22, 1995.

cy to one plant = 0.1 kilogram (100 grams). Amend. 516 to U.S.S.G. § 2D1.1(c) (1995).

Ronald C. Rachow, Asst. U.S. Atty., Reno, NV, for Plaintiff.

John W. Aebi, Aebi & McCarthy, Carson City, NV, for Defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

**Introduction**

Defendant David Neel Scholz is presently before the court for sentencing. Defendant Scholz has pleaded guilty to violations of 21 U.S.C. §§ 841 and 846, admitting that he, along with his wife and brother, operated several marihuana manufacturing facilities in and around Reno, Nevada. Scholz's drug farms formed part of an extensive marihuana production and distribution network controlled by one William Hall.

The court must in sentencing Mr. Scholz address several issues. First is the effect of a recent amendment to the United States Sentencing Guidelines concerning the calculation of quantity in marihuana prosecutions. Second is the degree to which Scholz can be deemed a manager or leader of the illegal activities. Third is the question whether Scholz is entitled to a downward departure for substantial assistance despite the government's failure to move for such departure.

### I. The Guidelines Amendment

The Guideline Amendment in question, Amendment 516 to U.S.S.G. § 2D1.1(c), became effective November 1, 1995, and must be given full retroactive effect. U.S.S.G. § 1B1.10 (1994 & Amends.1995) (authorizing sentence reductions where guidelines are amended during defendant's term of imprisonment). The amendment purports to change the "equivalency" rating for marihuana offenses under 21 U.S.C. § 841(b)(1). The former guidelines tracked precisely the statutory equivalency rating of one marihuana plant = one kilogram of marihuana. U.S.S.G. § 2D1.1(c)(4) (1994); 21 U.S.C. § 841(b)(1)(A)(vii) (1994). The guideline amendment, however, reduces the equivalen-

Defendant Scholz concedes that the marihuana farm he operated on Marla Street in Reno, Nevada contained more than 1,000 marihuana plants at the time of his arrest (Sentencing Memorandum and Motion for Departure, Doc. # 413, at 5). The Sentencing Guidelines' Drug Quantity Table which appears at U.S.S.G. § 2D1.1(c) provides a base offense level of 32 for violations of 21 U.S.C. § 841(b)(1)(A) (violations involving 1,000 kg of marihuana or 1,000 plants *regardless of weight*).

■ In his motion for downward departure, Defendant Scholz argues that Guideline Amendment 516 should operate to reduce his mandatory minimum sentence under the statute to 5 years under § 841(b)(1)(B). His argument would have this court apply the one plant = 0.1 kg equivalency rating, thereby reducing the amount of marihuana he has admitted producing from 1,000 kg to 100 kg. Defendant cites *United States v. Muschik*, 49 F.3d 512 (9th Cir.1995), *petition for cert. filed*, 64 U.S.L.W. 3086 (U.S. July 25, 1995) (No. 95–156), as support for the proposition that because sentencing guideline amendments are sent to Congress for review before taking effect, that this court should "harmonize" the apparently conflicting statute and guideline.

*Muschik's* holding that the sentencing guideline amendment setting a uniform medium weight for LSD offenses under 21 U.S.C. 841(b)(1) does not conflict with the statutory per-gram measurement scheme rests on the unique nature of LSD offenses. LSD, unlike any other controlled substance, is sold by dose rather than by weight. The statutory per-gram measurement is exceedingly unhelpful in determining the amount of LSD involved; LSD is effective in infinitesimal amounts. The U.S. Supreme Court was forced to recognize this fact in *Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). The Court ruled that in LSD prosecutions under 21 U.S.C. § 841, the sentencing court must calculate the quantity of LSD involved by weighing not only the quantity of active drugs but also

the medium on which the drug is transported. 500 U.S. at 468, 111 S.Ct. at 1929.

The Sentencing Guideline Commission sought to eliminate the potential for disparity in LSD sentences which would result from the fact that, under *Chapman,* an LSD dose deposited on a sugar cube would far outweigh the same dose carried on blotter paper. The Commission therefore adopted Amendment 488, the provision at issue in *Muschik,* which set a uniform medium weight to be included in the quantity calculus for LSD offenses. In so doing, the Commission was attempting to harmonize the per-gram statutory measurement with the Court's recognition in *Chapman* that at least *some* of the medium weight ought to be included in the measurement.

No such problems of weight and measurement inhere in prosecutions for marihuana offenses. It may be true, as an empirical matter, that the one plant = one kilogram equivalency rating provided by the statute greatly exaggerates the drug-producing potential of an average marihuana plant. Nonetheless, the statutory language is crystal clear. In convictions under 21 U.S.C. § 841(b)(1) involving 1,000 kilograms or more of marihuana, or 1,000 marihuana plants *regardless of weight,* the mandatory minimum prison sentence is 10 years. 21 U.S.C. § 841(b)(1)(A)(vii).

Therefore, if Defendant Scholz is sentenced under the statutory minimum, the court may not recalculate the amount of marihuana discovered in Defendant Scholz' possession by multiplying Amendment 516's 100–gram equivalency by the number of plants discovered in the Marla Street marihuana farm. To do so would be to ignore clear statutory language. The phrase "regardless of weight" would, under the interpretation advanced in Defendant's Motion for Downward Departure, become meaningless.

■ It is beyond question that where the language of a sentencing guideline conflicts with statutory language, the statute controls. U.S.S.G. § 5G1.1(b); *United States v. Muschik,* 49 F.3d 512, 515 (9th Cir.1995). *Muschik,* which attempted to resolve an ambiguity in the law created by the Supreme Court in *Chapman,* does not permit this court to ignore the "regardless of weight" language in the statute itself.

For these reasons, then, Defendant Scholz' argument that *Muschik* requires this court to find a violation of 21 U.S.C. § 841(b)(1)(B) (five-year minimum sentence for 100 kilograms of marijuana or 100 marihuana plants) rather than § 841(b)(1)(A) (ten year minimum sentence for 1,000 kilograms of marihuana or 1,000 marihuana plants) must be rejected.[1]

## II. Scholz's Managerial Status

The necessity of finding Defendant Scholz's drug manufacturing violation to be within the 1,000 kilogram/1,000 marihuana plant penalty provision of the statute notwithstanding, Scholz may yet avoid the mandatory 10 year sentence by proving facts entitling him to sentencing under the guidelines, rather than under the statutory minimum. U.S.S.G. § 5C1.2.

U.S.S.G. § 5C1.2 requires the court to impose sentence in accordance with the applicable guidelines *without regard to any statutory minimum sentence* upon finding the defendant to have met the criteria set out in 18 U.S.C. § 3553(f)(1) to (5). There are five requirements: (1) The defendant has no more than 1 criminal history point, (2) the offense did not involve violence, the credible

---

1. It is noteworthy that *Muschik* represents an anomalous construction of the guideline amendment regarding the standard medium weight included in quantity calculation for LSD prosecutions. The First, Third, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits have all reached contrary results. *See United States v. Stoneking,* 60 F.3d 399 (8th Cir.1995) (vacating earlier opinion published at 34 F.3d 651—the opinion adopted by the *Muschik* court), *petition for cert. filed* (U.S. July 28, 1995) (No. 95–5410); *United States v. Pope,* 58 F.3d 1567 (11th Cir.1995);

*United States v. Andress,* 47 F.3d 839, 840–41 (6th Cir.1995) (per curiam); *United States v. Hanlin,* 48 F.3d 121, 124–25 (3d Cir.1995); *United States v. Neal,* 46 F.3d 1405, 1408–09 (7th Cir.) (en banc), *cert. granted,* —— U.S. ——, 115 S.Ct. 2576, 132 L.Ed.2d 826 (1995); *United States v. Pardue,* 36 F.3d 429 (5th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995); *United States v. Mueller,* 27 F.3d 494 (10th Cir.1994); *United States v. Boot,* 25 F.3d 52 (1st Cir.1994).

threat thereof, or the possession of a firearm or dangerous weapon, (3) the offense did not result in death or serious bodily harm to anyone, (4) the defendant was not an organizer, leader, manager or supervisor of others *and* was not engaged in a continuing criminal enterprise, and (5) the defendant gave the government all the information and evidence in his possession regarding the offense. U.S.S.G. 5C1.2.

█ If, therefore, Defendant Scholz can prove the foregoing factual predicate, this court will then be required by U.S.S.G. § 5C1.2 to impose the guideline sentence. Under the recent amendment to U.S.S.G. 2D1.1(c), he would then be entitled to a sentence calculated under the 1 plant = 0.1 kilogram equivalency rating.

With respect to subparagraphs 1, 2, 3, and 5 of U.S.S.G. § 5C1.2, there appears little question but that Defendant Scholz satisfies these requirements. There is no prior criminal history, there was no violence associated with the offense, no weapons appear to be involved, and the defendant appears to have fully cooperated with the law enforcement authorities.

Subparagraph 4, on the other hand, raises a substantial question regarding Defendant Scholz' managerial status. The government has already sought to prove Scholz' managerial status; the Presentence Report in this case recommends a two-unit base offense level increase pursuant to U.S.S.G. § 3B1.1(c). Addendum to Presentence Report at 1. Application Note 5 to U.S.S.G. § 5C1.2 specifically incorporates U.S.S.G. § 3B1.1(c)'s definition of "organizer, leader," etc.

█ Our inquiry into Scholz' managerial status is thus identical for both purposes. It is important to note, however, that the Defendant is entitled to the benefit of any doubt as to his managerial status: Because there is no evidence that Scholz does not meet criteria 1, 2, 3, or 5 of § 5C1.2, he is entitled to a departure from the statutory minimum pursuant to U.S.S.G. § 5C1.2 if the government does not prove his managerial status under U.S.S.G. § 3B1.2(a) by a preponderance of the evidence. *United States v. Hoac,* 990

F.2d 1099, 1110 (9th Cir.1993); *United States v. Mares–Molina,* 913 F.2d 770, 772 (9th Cir.1990).

If, on the other hand, Scholz was a manager, then he is not entitled to avoid the statutory minimum under U.S.S.G. § 5C1.2, and he is subject to a two-unit base offense level increase under U.S.S.G. § 3B1.1(c).

The meaning and purpose of the "manager, supervisor," etc. language is explained in the Background Note to U.S.S.G. § 3B1.1. The note lists "[f]actors the court should consider," namely

1. exercise of decision-making authority,
2. nature of participation in the offense,
3. recruitment of accomplices,
4. claimed right to a larger share in criminal profits,
5. degree of participation in planning or organization,
6. nature and scope of the illegal activity, and
7. degree of control and authority over others.

█ In applying the foregoing criteria, the relevant "illegal activity" over which the defendant is alleged to have had authority must be the entire enterprise. *See United States v. Rose,* 20 F.3d 367 (9th Cir.1994); *United States v. Manthei,* 913 F.2d 1130 (5th Cir. 1990) (defining "offense" for managerial enhancement purpose to include criminal scheme larger in scope than offense charged). This case involved 12 individuals and numerous marihuana grow sites, and included an interstate distribution system. Defendant Scholz's involvement appears to have been limited to the operation of two or three grow sites, all in the Reno area.

To be sure, there is some indication that Defendant Scholz exercised limited authority over his own grow sites. Evidence that Scholz recruited his wife and brother into the marihuana-growing business appears in the DEA report, at 6–7, ¶¶ 36–38, and at 17–18, ¶¶ 85–88. Evidence that Scholz exercised decision-making authority, specifically in the selection of a site for his grow operation, appears at 11, ¶ 56, and 16, ¶ 80. Scholz apparently also exercised decision-making

authority with respect to planting and harvesting techniques. DEA Report at 15, ¶ 75, and 19, ¶ 97. In addition, Scholz's brother was apparently paid a salary. DEA Report at 18, ¶ 90. Scholz himself had arranged with codefendant William Hall to take half the profits netted by the marijuana growing operation. Presentence Report at 8.

Viewing the total amount of evidence that Scholz wielded managerial authority over the marihuana-growing operation, however, it appears that while Scholz may have had some authority over his wife and brother, his position in the entire operation was that of a worker, rather than an organizer. *See United States v. Barnes,* 993 F.2d 680, 685 (9th Cir.1993) (suggesting that exercise of authority over one person may be insufficient basis upon which to impose enhanced sentence for managerial status under U.S.S.G. § 3B1.2(a)). The majority of supervisory power seems to have been in the hands of Hall and Luker, with Scholz exercising decision-making authority only over the two or three grow sites of which he was in charge. Scholz's grow houses formed a portion of the larger operation. Distribution appears to have been in the hands of Hall and Luker. All told, then, Scholz appears not to have occupied a position of much authority in the overall scheme.

The court finds that Scholz was not a manager, organizer, leader or supervisor within the meaning of U.S.S.G. §§ 3B1.2 or 5C1.2. Scholz must be exempted from the U.S.S.G. § 3B1.2 offense level increase.

Therefore, the court finds that Defendant Scholz is affirmatively entitled under U.S.S.G. § 5C1.2 to avoid the statutory minimum sentence, and to the benefit of the recent amendment to the guidelines. Scholz has pled guilty to Count One of the indictment, conspiracy to manufacture and possess with the intent to distribute more than 1,000 marijuana plants, in violation of 21 U.S.C. § 846(a)(1) and (b)(1)(A)(vii). *See* Defendant's Sentencing Memorandum and Motion for Departure, Doc. # 413, at 5. By stipulation the parties set the number of marijuana plants for which Scholz should bear criminal responsibility at between 1,000 and 3,000.

Memorandum of Plea Agreement at ¶ 1; Presentence Report at ¶ 32.

At Guideline Amendment 516's one plant = 0.1 kg ratio, Scholz deserves a sentence calculated by multiplying number of plants by 0.1. Scholz should therefore be sentenced under U.S.S.G. § 2D1.1(c)(7), which sets a base offense level of 26 for offenses involving between 100kg and 400kg of marihuana. After adding two points for obstruction of justice under U.S.S.G. § 3C1.1, *see* Presentence Report at ¶ 37, and subtracting three points for acceptance of responsibility under U.S.S.G. § 3E1.1, *see* Presentence Report at ¶ 39, the adjusted offense level becomes 25. Mr. Scholz has been determined to fall into Criminal History Category I. Presentence Report at 14. A base offense level of 25 carries a sentence range of between 57 and 71 months for defendants in Criminal History Category I.

### III. Downward Departure for Substantial Assistance

■ Finally, Scholz has argued that he provided substantial assistance to the government in the prosecution of his accomplices, thus entitling him to a downward departure under U.S.S.G. § 5K1.1.

■ Though the government has not made a 5K1.1 motion, Scholz argues that the government's refusal to file such a motion constitutes a violation of his constitutional rights. In general, section 5K1.1 grants the government the power, but does not impose a duty, to move for downward departure for substantial assistance. *United States v. Murphy,* 65 F.3d 758, 762 (9th Cir.1995). The U.S. Supreme Court has held, however, that a district court sentencing an offender may *sua sponte* grant a downward departure if it finds the government's refusal to make the 5K1.1 motion to have been the result of an "unconstitutional motive" or was not rationally related to any legitimate government interest. *Wade v. United States,* 504 U.S. 181, 184–86, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992).

Scholz has on several occasions in the course of this prosecution claimed the existence of a promise by the federal government

that it would not prosecute him in exchange for his cooperation. This court has ruled that Mr. Scholz has failed to carry the burden of proving the existence of such an agreement. Presently at issue is a threat apparently issued by the Assistant U.S. Attorney prosecuting Mr. Scholz. Scholz's lawyer testified that AUSA Rachow told him Scholz would receive a heavier sentence if he moved to dismiss the case on the grounds of the alleged agreement.

The constitutional argument advanced by Defendant Scholz rests on an alleged violation of his right to due process. He claims the government acted out of sheer vindictiveness when it withdrew an earlier promise of a substantial assistance motion in retaliation for Mr. Scholz's motion to dismiss. Scholz argues that this behavior by the government bears no rational relation to any legitimate government interest, and that the refusal to make the 5K1.1 motion was designed merely to punish him for exercising his right to move to dismiss the case.

The Ninth Circuit has recently ruled, in a case factually similar to the present one, that the government's refusal to file a § 5K1.1 motion in order to punish a defendant for exercising his Sixth Amendment right to a trial was "vindictive" and thus resulted from an unconstitutional motive within the meaning of *Wade. United States v. Murphy,* 65 F.3d 758, 762 (9th Cir.1995). However, the court also ruled that no constitutional violation occurs when, during plea bargaining, the government threatens to withhold a 5K1.1 motion if the defendant rejects a proposed agreement. *Id.* at 763.

The situation in this case, as in the *Murphy* case, differs significantly from that in *United States v. Treleaven,* 35 F.3d 458 (9th Cir.1994), cited by Defendant in his motion for downward departure. In *Treleaven,* the government subpoenaed the defendant to testify after rejecting defense counsel's offer of testimony against the codefendants. The defendant had been moved to another prison, and his lawyer had not been able to contact him to inform him that the offer of testimony had been rejected. He proceeded to testify, assuming that the deal was in place. The court held that the government's "potentially

unconstitutional *behavior* " was an "unconstitutional motive" under *Wade.* 35 F.3d at 461–62. *Treleaven* thus presents a situation where the government manipulated the defendant and his counsel into providing assistance by allowing the defendant to proceed with his testimony in the false hope of a forthcoming 5K1.1 motion.

■ No such deception occurred in this case. As the court in *Murphy* recognized, plea bargaining by its very nature deters a defendant from exercising his right to trial. *Murphy,* 65 F.3d at 763 (citing *Bordenkircher v. Hayes,* 434 U.S. 357, 362–64, 98 S.Ct. 663, 667–69, 54 L.Ed.2d 604 (1978)). As long as the defendant is free to accept or reject the proposed agreement, there is no impermissible retaliation or punishment when the government eventually makes good its threat. Likewise, the carrying out of the government's threat to withhold a 5K1.1 motion does not equal an unconstitutional retaliation against a defendant for exercising his right to trial. *Murphy, id.*

In the present case, it appears that the government's initial offer of a 5K1.1 motion was to stand open only for a limited time. The AUSA prosecuting the case, Mr. Rachow, felt the pressure of an impending trial and determined to force Mr. Scholz to decide quickly whether or not to cooperate. The time for accepting the 5K1.1 offer expired before Mr. Scholz accepted it. Neither the time limit on acceptance of the 5K1.1 offer, nor the offer's subsequent cancellation, appear to result from any improper motive on the part of the government.

Nor was the government's refusal to file the 5K1.1 motion unconstitutionally arbitrary or unrelated to any legitimate government interest. The interest served by enforcing threats made during plea bargaining is rationally related to the legitimate government interest in maintaining the effectiveness of the plea negotiation process. *Murphy,* 65 F.3d at 764 (citing *United States v. Maddox,* 48 F.3d 791, 796–97 (4th Cir.1995)).

**Conclusion**

For the foregoing reasons, this court must reject Defendant Scholz's argument that the sentencing guidelines amendment qualifies

him for the lower mandatory minimum sentence. However, because the evidence is insufficient to establish Scholz's managerial status under U.S.S.G. § 3B1.1 the government's motion to increase the base offense level by two units must be denied, and Scholz's motion to permit him to avoid the mandatory minimum sentence under U.S.S.G. § 5C1.2, and to be sentenced instead under the amended sentencing guideline should be granted. Finally, Scholz's request for downward departure for substantial assistance under U.S.S.G. § 5K1.1 should be denied: The government has made no 5K1.1 motion, and there exist insufficient grounds to attribute to the government an unconstitutional motive in failing to make such a motion.