**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Angela RUIZ, Defendant–Appellant.**

No. 00–50048.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 12, 2000

Filed March 5, 2001

Troy A. Britt, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

David P. Curnow, Assistant United States Attorney, Criminal Division, San Diego, California, for the plaintiff-appellee.

Before: BOOCHEVER, TASHIMA, and TALLMAN, Circuit Judges.

Opinion by Judge BOOCHEVER; Concurrence by Judge TASHIMA; Dissent by Judge TALLMAN

BOOCHEVER, Circuit Judge:

Angela Ruiz ("Ruiz") appeals from the sentence imposed by the district court after she pled guilty to charges of marijuana importation. Ruiz challenges the Government's refusal to recommend, and the district court's denial of, a downward departure from the applicable sentencing guideline range under the "fast track" program. We reverse and remand.

## BACKGROUND

Ruiz was arrested for importing marijuana from Mexico into the United States. The Government offered a plea bargain which, among other things, provided for a two-level downward departure from the otherwise applicable sentencing guideline range under the "fast track" program. The United States Attorney's Office for the Southern District of California adopted the "fast track" program to minimize the expenditure of government resources and expedite the processing of more routine

cases. Plea bargains offered under this program require defendants to plead guilty, as well as waive their rights to an indictment, to an appeal, and to present motions. Defendants must also waive their rights to receive certain information pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In exchange, the Government promises to recommend a two-level downward departure to the sentencing judge.[1]

According to Ruiz, she declined to accept the plea bargain because it contained an unconstitutional waiver of *Brady* rights. She subsequently pled guilty to the charges with no plea agreement. At the sentencing hearing, Ruiz requested several downward departures, including a two-level "fast track" departure. The Government opposed the request. Ruiz claimed that she nevertheless qualified for the departure because, aside from refusing to waive her *Brady* rights, she substantially complied with the requirements of the "fast track" program (*e.g.*, entering an early guilty plea and declining to file motions). Ruiz also argued that the Government opposed the "fast track" request only because she refused to enter into a plea agreement containing an unconstitutional waiver of her *Brady* rights.

The district court denied the downward departure because the Government provided no "fast track" recommendation and no plea agreement required the Government to do otherwise. Ruiz's sentencing range was 18–24 months. Had Ruiz received the two-level "fast track" departure, the range would have been 12–18 months. The district court sentenced Ruiz to 18 months.

## DISCUSSION

Ruiz argues that the Government's refusal to recommend a two-level "fast track" departure was unconstitutional. At the center of Ruiz's appeal is the contention that the right to receive undisclosed *Brady* evidence cannot be waived through plea agreements. Ruiz argues that, because *Brady* rights are not waivable, prosecutors cannot condition the benefits of a plea bargain (*e.g.*, a "fast track" recommendation) on the waiver of such rights; or, stated alternatively, prosecutors cannot withhold the benefits of a plea bargain simply because a defendant refuses to waive her unwaivable *Brady* rights. According to Ruiz, the Government withheld the "fast track" recommendation for this unconstitutional reason and, therefore, the district court had authority to provide a remedy (*e.g.*, grant the two-level "fast track" departure on its own).

Ruiz asks this court to vacate her sentence and remand the case so the district court may determine whether the Government acted with an unconstitutional motive and, if so, whether it should exercise its discretion to provide a remedy for the violation.

## I. Appellate Jurisdiction

As an initial matter, the Government contends that we lack jurisdiction over Ruiz's appeal. The Government argues that its refusal to recommend a "fast track" departure and the district court's denial of Ruiz's request for the same are not reviewable. We disagree.

The statute governing a defendant's right to appeal a federal sentence, 18 U.S.C. § 3742(a), provides in relevant part:

A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines[.]

As a general rule, under 18 U.S.C. § 3742, we cannot review a district court's discretionary denial of a defendant's request for a downward departure from the sentencing guidelines. *United States v. Morales*, 898 F.2d 99, 102 (9th

---

1. Elsewhere, we have more fully described the operation of and the policies behind the "fast track" program. *See United States v. Ramirez–Cortez*, 213 F.3d 1149 (9th Cir.2000); *United States v. Estrada–Plata*, 57 F.3d 757 (9th Cir.1995).

Cir.1990). This general rule of nonreviewability, however, does not insulate any and all decisions by district courts to reject downward departures. It only precludes appellate review of the court's exercise of discretion in such matters. *See id.* (decision to deny departure not reviewable because it "was an act of discretion"). Claims that the district court failed to exercise any discretion at all in rejecting a downward departure are reviewable. *United States v. Cervantes–Valenzuela,* 931 F.2d 27, 29 (9th Cir.1991) (per curiam). Also, we have jurisdiction over claims that the district court rested its decision not to depart on an erroneous belief that it lacked authority to do so. *United States v. Eaton,* 31 F.3d 789, 793 (9th Cir.1994).

■ Jurisdiction is also proper over constitutional challenges to the sentencing process, like the challenge Ruiz brings here. *See, e.g., United States v. Khoury,* 62 F.3d 1138, 1140–41 (9th Cir.1995) (holding that appellate courts have jurisdiction over constitutional challenges to government's refusal to recommend and district court's denial of downward departure); *United States v. Arishi,* 54 F.3d 596, 597–98 (9th Cir.1995) (same); *see also Wade v. United States,* 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992) (exercising jurisdiction over similar claim); *United States v. Mikaelian,* 168 F.3d 380, 384 (9th Cir.1999) (same); *United States v. Murphy,* 65 F.3d 758, 762–64 (9th Cir.1995) (same); *United States v. Treleaven,* 35 F.3d 458, 460–61 (9th Cir.1994) (same).

Although the above cases do not expressly state that constitutional challenges

are reviewable under section 3742(a)(1) as claims that the sentence was "imposed in violation of law," other circuits have articulated this sensible rationale. *See, e.g., United States v. Senn,* 102 F.3d 327, 331 (7th Cir.1996) (constitutional claim that prosecutor arbitrarily refused to recommend greater downward departure satisfies "violation of law" standard of section 3742(a)); *United States v. Graham,* 72 F.3d 352, 358 n. 8 (3rd Cir.1995) (constitutional claim that prosecutor tainted sentencing hearing by introducing undisclosed allegations satisfies "violation of law" standard); *United States v. Holmes,* 60 F.3d 1134, 1137 (4th Cir.1995) (constitutional claim that district court sentenced defendant at top of guideline range because victims were black was claim that sentence was "imposed in violation of law"); *see also United States v. Drown,* 942 F.2d 55 (1st Cir.1991) ("When a defendant unsuccessfully challenges not the judge's exercise of discretion but the constitutionality of the scheme under which he was sentenced, the court of appeals has appellate jurisdiction under 18 U.S.C. § 3742(a)(1).").

For the foregoing reasons, we conclude that a constitutional challenge to a prosecutor's refusal to recommend a downward departure, and a district court's refusal to grant such a departure, is appealable under 18 U.S.C. § 3742(a)(1) as a claim that the sentence was "imposed in violation of law." Therefore, we have jurisdiction over Ruiz's constitutional challenge to the Government's refusal to recommend a "fast track" departure and the district court's refusal to grant the same.[2]

---

**2.** The Government does not argue that we are divested of jurisdiction because the district court understood it could grant the "fast track" departure without a government recommendation. Nevertheless, the dissent would conclude jurisdiction is lacking on this basis. We decline to accept the dissent's reading of the record. At the sentencing hearing, the district court expressed its belief with sufficient clarity that, because Ruiz rejected the Government's plea agreement, it lacked the power to grant the "fast track" departure. It stated, "Counsel, isn't your plea bargain a matter of contract that's an offer

and acceptance? ... And if you don't accept it, that's a decision you have to make. And if you do, the Government is bound by it." In fact, the Government confirms in its opposition brief that "[t]he district court simply pointed out that the proposed plea agreement was a contract that Ruiz did not enter into, and therefore, the unaccepted benefits were not available." Moreover, even if the district court had understood that "the absence of [government] consent does not constitute an absolute and categorical bar to departure" under the "fast track" program, *see United States v. Rodriguez–Lopez,* 198 F.3d 773, 775–

█ The Government argues in the alternative (and the dissent would agree) that, by pleading guilty, Ruiz forfeited her right to challenge the constitutionality of the *Brady* waiver contained in the plea bargain she rejected before entering her guilty plea. Generally, an unconditional guilty plea extinguishes the right to appeal all rulings and constitutional defects preceding the plea. *United States v. Broce,* 488 U.S. 563, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989).

The Government mischaracterizes Ruiz's appeal. Ruiz claims that the Government violated her constitutional rights *after* she pled guilty. Specifically, she asserts that the Government unconstitutionally refused to recommend the "fast track" departure at the sentencing hearing. As the alleged constitutional violation from which Ruiz seeks relief did not occur until *after* the guilty plea, Ruiz is entitled to seek review. We recognize that, to prevail on her downward departure claim, Ruiz must show that the *Brady* waiver contained in the rejected plea agreement is unconstitutional. However, this showing is only relevant as evidence that the Government acted with an unconstitutional motive at the sentencing hearing.

The Government also suggests that Ruiz's appeal must fail because Ruiz is trying to enforce the terms of a plea bargain (*i.e.,* the two-level "fast track" departure) which she rejected. Again, the Government mischaracterizes Ruiz's appeal. Ruiz is not attempting to enforce the rejected plea agreement as a contract. As discussed above, she brings a constitutional challenge to the Government's refusal to recommend a downward departure from the sentencing guidelines. The rejected plea agreement, with the two-level "fast track" departure and the *Brady* waiver, is merely evidence of the Government's allegedly impermissible motive.

---

76 (9th Cir.1999), we doubt such a general understanding would entitle the district court to ignore a defendant's specific constitutional

## II. Constitutionality of the Government's Refusal to Recommend the "Fast Track" Departure

Ruiz argues that the Government unconstitutionally refused to recommend a "fast-track" departure. Specifically, Ruiz contends that: (1) the right to receive undisclosed *Brady* evidence is not subject to waiver through plea agreements, (2) prosecutors cannot withhold a "fast track" recommendation simply because a defendant declines to waive her *Brady* rights, and (3) the Government here withheld the "fast track" recommendation for this reason. We address each argument in turn.

### A. Validity of *Brady* Waiver

█ The plea agreement offered by the Government contained a waiver of certain rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady,* the Supreme Court held that the Due Process Clause requires prosecutors to disclose evidence that is material and favorable to the defendant. Ruiz argues that defendants cannot voluntarily and intelligently waive the constitutional right to receive undisclosed *Brady* evidence and, therefore, any such waiver is invalid. We review the validity of a waiver contained in a plea agreement de novo. *United States v. Martinez,* 143 F.3d 1266, 1270 (9th Cir.1998).

### 1. Waiver of *Brady* Rights in General

█ Some constitutional rights are automatically waived by entering an unconditional guilty plea. Such rights include, among others, the right to a jury trial, the right to confront one's accusers, and the right to invoke the privilege against self-incrimination, *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), as well as the right to challenge constitutional defects which occur before entry of the plea. *Broce,* 488 U.S. at 573–74, 109 S.Ct. 757.

challenge to the sentencing process and preclude appellate review of the same.

Of the rights that survive entry of a guilty plea, some still may be expressly waived through plea agreements. For example, defendants generally may agree to waive the right to appeal the sentence, *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir.1996), and the right to file a civil suit under 42 U.S.C. § 1983 seeking redress for government violations of constitutional rights. *Newton v. Rumery*, 480 U.S. 386, 397–98, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987).

Some rights, however, can never be waived. For example, a plea agreement cannot bar defendants from asserting "claims involving a breach of the plea agreement, racial disparity in sentencing among codefendants or an illegal sentence imposed in excess of a maximum statutory penalty." *Baramdyka*, 95 F.3d at 843. Nor can defendants waive the right to a unanimous jury verdict, *United States v. Ullah*, 976 F.2d 509, 512 (9th Cir.1992), or a speedy trial. *United States v. Lloyd*, 125 F.3d 1263, 1268 (9th Cir.1997).

Ruiz argues that the due process right to receive undisclosed *Brady* information falls into the category of rights that can never be waived. Although no court has addressed whether *Brady* rights are waivable through plea agreements, we have determined that *Brady* rights are not automatically waived by entry of a guilty plea. In *Sanchez v. United States*, 50 F.3d 1448 (1995), we held that guilty pleas "cannot be deemed intelligent and voluntary if entered without knowledge of material information withheld by the prosecution." *Id.* at 1453 (quotation marks omitted). We reasoned that "a defendant's decision whether or not to plead guilty is often heavily influenced by his appraisal of the prosecution's case." *Id.* (quotation marks

omitted). Also, we explained that "if a defendant may not raise a *Brady* claim after a guilty plea, prosecutors may be tempted to deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas." *Id.*

The rationale of *Sanchez* applies with equal force to plea agreements. Plea agreements, like guilty pleas, must be entered voluntarily and intelligently to satisfy due process requirements. *See Baramdyka*, 95 F.3d at 843; *United States v. Navarro–Botello*, 912 F.2d 318, 321–22 (9th Cir.1990). The disclosure of *Brady* evidence is just as important in ensuring the voluntary and intelligent nature of a plea bargain as it is in ensuring the voluntary and intelligent nature of a guilty plea. In both situations, the defendant's decision "is often heavily influenced by his appraisal of the prosecution's case." *Sanchez*, 50 F.3d at 1453. Moreover, the same prosecutorial incentive to withhold *Brady* information that would arise if guilty pleas extinguished *Brady* rights, would arise if plea agreements could extinguish those rights. *See id.* Therefore, plea agreements, and any waiver of *Brady* rights contained therein, "cannot be deemed intelligent and voluntary if entered without knowledge of material information withheld by the prosecution." *Id.* (quotation marks omitted).[3]

Other circuits have applied the same rationale to bar waivers of ineffective assistance of counsel claims associated with the negotiation of plea agreements. Claims of ineffective assistance of counsel, like claims based on the failure to disclose *Brady* evidence, challenge the voluntary and intelligent nature of the plea agreement. As the Eighth Circuit recently ex-

---

3. Commentators analyzing this issue have followed the same logic and reached the same conclusion. *See* Daniel P. Blank, *Plea Bargain Waivers Reconsidered: A Legal Pragmatist's Guide to Loss, Abandonment and Alienation*, 68 Fordham L.Rev.2011, 2085 (2000) ("[B]ecause preplea disclosure [of *Brady* material] is required to ensure that a guilty plea comports with due process, then it cannot be

waived without the plea itself being invalidated."); Erica G. Franklin, Comment, *Waiving Prosecutorial Disclosure in the Guilty Plea Process: A Debate on the Merits of "Discovery" Waivers*, 51 Stan. L.Rev. 567, 581 (1999) (waiver of *Brady* rights can never be intelligent and knowing because "the waiver, by definition, assures that the defendant can never know what he is waiving").

plained, a "decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside the range of competence[.]" *DeRoo v. United States,* 223 F.3d 919, 923–24 (8th Cir.2000) (quotation marks omitted). Therefore, " '[j]ustice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of [an] agreement cannot be barred by the agreement itself—the very product of the alleged ineffectiveness.' " *Id.* (quoting *Jones v. United States,* 167 F.3d 1142, 1145 (7th Cir.1999)); *see also United States v. Cockerham,* 237 F.3d 1179, 1187 (10th Cir.2001) (waiver in plea agreement cannot bar ineffective assistance of counsel claims associated with negotiation of agreement); *United States v. Henderson,* 72 F.3d 463, 465 (5th Cir.1995) (waiver of appeal does not bar "claim that the plea agreement generally, and the defendant's waiver of appeal specifically, were tainted by ineffective assistance of counsel"); *United States v. Craig,* 985 F.2d 175, 178 (4th Cir.1993) (same).[4]

■ For the same reason courts have concluded that the ineffective assistance of counsel during plea negotiations invalidates the plea agreement, we conclude that the failure to disclose *Brady* evidence also invalidates the plea agreement. In both cases, by definition, the defendant cannot accept the plea agreement intelligently and voluntarily as required by due process. Without an intelligent and voluntary acceptance, the plea agreement cannot be valid. If the plea agreement is invalid, all waivers contained in the plea agreement, including the waiver of the right to receive undisclosed *Brady* evidence, must also be invalid. The "waiver

[can]not bar claims that relate to the validity of the waiver itself." *United States v. Racich,* 35 F.Supp.2d 1206, 1210 (N.D.Cal. 1999), *aff'd,* 215 F.3d 1335 (9th Cir.2000).[5]

■ The Government contends that a plea agreement's waiver of the right to receive undisclosed *Brady* evidence satisfies the voluntary and intelligent requirement because, unlike the entry of a guilty plea, a plea agreement ensures that the defendant is aware of the rights being waived. In *Sanchez,* however, it was not the government's failure to disclose the right to *Brady* evidence that we found rendered guilty pleas involuntary and unintelligent; it was the failure to disclose the actual *Brady* evidence. *See Sanchez,* 50 F.3d at 1454. A defendant's abstract awareness of her rights under *Brady* is a pale substitute for the receipt of concrete *Brady* material which, for example, may include evidence that the arresting officer was twice convicted of perjury or that another suspect confessed to the crime. Without disclosure of the *Brady* evidence itself, the plea agreement and the *Brady* waiver contained therein cannot be intelligent and voluntary. Therefore, we conclude that a defendant's right to receive undisclosed *Brady* material cannot be waived through a plea agreement and that any such waiver is invalid.

### 2. Waiver of Impeachment Evidence

■ The Government argues that, even if a waiver of *all Brady* rights is invalid, the plea agreement at issue here is still valid because it only waives *some Brady* rights. In particular, the plea agreement's waiver only applies to impeachment evidence, *i.e., Brady* information relating

---

**4.** We have expressed our approval of this conclusion in dicta. *See United States v. Pruitt,* 32 F.3d 431, 433 (9th Cir.1994) ("We doubt that a plea agreement could waive a claim of ineffective assistance of counsel based on counsel's erroneously unprofessional inducement of the defendant to plead guilty or accept a particular plea bargain."); *United States v. Abarca,* 985 F.2d 1012, 1014 (9th Cir.1992) (stating that express waiver of appeal does not categorically foreclose claim

based on ineffective assistance of counsel or involuntariness of waiver); *see also Baramdyka,* 95 F.3d at 844 (following *Pruitt* ).

**5.** The same principle apples to claims of incompetence. A defendant who is incompetent cannot "knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate v. Robinson,* 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

to the credibility of government witnesses. It does not apply to exculpatory evidence, *i.e., Brady* information relating to the factual innocence of the defendant. The waiver provides:

### WAIVER OF RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

The Government represents that any information establishing the factual innocence of the defendant known to the undersigned prosecutor in this case has been turned over to the defendant. The Government understands it has continuing duty to provide such information establishing factual innocence of the defendant.

The defendant understands that if this case proceeded to trial, the Government would be required to provide impeachment information relating to any informants or other witnesses. In addition, if the defendant raised an affirmative defense, the Government would be required to provide information in its possession that supports such a defense. In return for the Government's promises set forth in this agreement, the defendant waives the right to this information, and agrees not to attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

 The *Brady* rule encompasses impeachment evidence as well as exculpatory evidence. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The Government contends that impeachment evidence is only relevant if there is going to be a trial. Therefore, according to the Government, it need not disclose such evidence at the pretrial, plea bargain stage. In *Bagley,* however, the Supreme Court declined to recognize any meaningful difference between these two types of *Brady* evidence. "This Court has rejected any such distinction between impeachment evidence and exculpatory evidence.... When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within th[e] general rule [of *Brady* ]." *Id.* at 676–677, 105 S.Ct. 3375 (quotation marks omitted).

Moreover, nothing in *Sanchez* suggests that only exculpatory evidence must be disclosed before the entry of a guilty plea. In *Sanchez,* we held that prosecutors must disclose *Brady* material before a defendant enters a guilty plea, without drawing a distinction between exculpatory and impeachment evidence. 50 F.3d at 1453. Nor would such a distinction make much sense. In the context of guilty pleas, the government is only required to disclose evidence favorable to the defendant if it is "material." *Id.* Evidence is "material" if "there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead and would have gone to trial." *Id.* at 1454. We see no reason why prosecutors should be permitted to withhold "material" impeachment evidence when disclosure of such evidence would create a reasonable probability the defendant would reject the plea agreement.

The principal case upon which the Government relies, *United States v. Gordon,* 844 F.2d 1397 (9th Cir.1988), is consistent with this conclusion. In *Gordon,* we held that prosecutors must disclose *Brady* information "at a time when disclosure would be of value to the accused." *Id.* at 1403 (quotation marks omitted). Applying this principle in the context of a trial, we determined that the prosecution was required to disclose the impeachment evidence while the accused still had an opportunity to impeach the testifying witness. *Id.* This does not mean, as the Government contends, that impeachment evidence is only valuable if there is going to be a trial. It simply means that, if there is going to be a trial, impeachment evidence, like exculpatory evidence, must be disclosed while it still is valuable.

 When there is *not* going to be a trial, however, as in the context of plea bargaining, *Brady* evidence is only valu-

able to the accused if it is disclosed before acceptance of the plea agreement. *See Sanchez*, 50 F.3d at 1454 ("the decision whether or not to plead guilty is often heavily influenced by [the defendant's] appraisal of the prosecution's case"). Accordingly, we reject the Government's argument that it need only disclose impeachment evidence if there is going to be a trial, and we conclude that the limited *Brady* waiver contained in the Government's plea agreement is invalid.

This conclusion, however, does not by itself entitle Ruiz to relief. She must also demonstrate that, as a legal matter, it is unconstitutional or arbitrary for prosecutors to oppose a downward departure based on a defendant's refusal to waive *Brady* rights. Finally, Ruiz must show that, as a factual matter, the Government opposed the downward departure for this reason.

## B. Constitutionality of Opposing Downward Departure Based on Defendant's Refusal to Waive *Brady* Rights

■ Prosecutors cannot withhold a recommendation for a downward departure on the basis of an unconstitutional motive (*e.g.*, racial or religious discrimination) or arbitrarily (*i.e.*, for reasons not rationally related to any legitimate governmental interest). *Wade v. United States*, 504 U.S. 181, 185–86, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992); *see also United States v. Treleaven*, 35 F.3d 458, 461 (9th Cir. 1994) (relief appropriate if "the government's refusal to move for a downward departure was based on impermissible motives, constituted a breach of a plea agree-

ment, or was not rationally related to any legitimate government purpose").[6]

■ Ruiz contends that the Government acted with an unconstitutional motive in refusing to recommend a "fast track" departure at her sentencing hearing. Ruiz argues that, because *Brady* rights are not waivable, the Government cannot legitimately withhold the benefits of a departure recommendation based on Ruiz's refusal to waive these rights. The Government suggests that conditioning a plea agreement on the waiver of *Brady* rights is nevertheless proper because Ruiz was always free to reject the agreement.

■ It is true that "incentives for plea bargaining are not unconstitutional merely because they are intended to encourage a defendant to forego constitutionally protected conduct." *United States v. Villasenor–Cesar*, 114 F.3d 970, 975 (9th Cir. 1997) (internal alterations, quotation marks omitted). This general rule, however, does not mean prosecutors may, for any reason, withhold discretionary benefits offered in a rejected plea bargain. *See, e.g., Khoury*, 62 F.3d at 1141–43 (government cannot vindictively withhold departure recommendation simply because defendant rejected plea bargain and exercised right to trial).

■ More importantly, the general rule that prosecutors may encourage the waiver of constitutional rights is premised on the assumption that the targeted rights may be validly waived. *See, e.g., United States v. Murphy*, 65 F.3d 758 (9th Cir.1995) (involving incentives to forgo waivable right to trial). Here, in contrast, the due process right to receive un-

6. The Government, as well as the dissent, suggest that this rule only applies to downward departure recommendations based on a defendant's "substantial assistance" to the government and does not apply to recommendations under the "fast track" program. Although the facts in *Wade* involved a "substantial assistance" recommendation, the Supreme Court reaffirmed that prosecutorial decisions in general are subject to constitutional limitations. In concluding that prosecutors cannot withhold "substantial assistance" recommendations for unconstitutional or arbitrary reasons, the Court explained, "[W]e see no reason why courts should treat a prosecutor's refusal to file a substantial-assistance motion differently from a prosecutor's other decisions." *Wade*, 504 U.S. at 185, 112 S.Ct. 1840. Likewise, we see no reason why courts should treat a prosecutor's refusal to file a "fast track" motion differently from a prosecutor's other decisions.

disclosed *Brady* material cannot be waived without offending another due process requirement, namely, that plea agreements be entered voluntarily and intelligently. Because *Brady* waivers are themselves unconstitutional, we conclude it is unconstitutional for prosecutors to withhold a departure recommendation based on a defendant's refusal to accept such a waiver.

## C. Evidence of Improper Motive

■ Ruiz must also make a "substantial threshold showing" by producing evidence that the Government, in fact, acted with an unconstitutional motive in refusing to move for a downward departure. *See Wade,* 504 U.S. at 186, 112 S.Ct. 1840. If Ruiz succeeds in making this showing, she would be entitled to an evidentiary hearing on remand regarding the Government's motives. *Id.* If the district court on remand determines that the Government acted with an unconstitutional motive, then it may, in its discretion, provide a remedy for the violation (*e.g.,* grant Ruiz's request for the "fast track" departure). *See id.* at 185–86, 112 S.Ct. 1840.

As discussed above, Ruiz argues that the Government opposed the "fast track" departure because she refused to waive her *Brady* rights. To show the Government was motivated by this impermissible consideration, Ruiz's counsel represented in the sentencing memorandum, at the sentencing hearing, and in the briefs on appeal, that Ruiz rejected the plea bargain only because it contained the *Brady* waiver. The Government argues that no admissible evidence supports Ruiz's claim that she rejected the plea bargain for this reason. The district court did not make any factual findings regarding the motives of Ruiz or the Government.

It is undisputed, however, that the plea bargain offered by the Government contained a waiver of certain *Brady* rights, that Ruiz rejected that plea bargain, and that the Government opposed the "fast track" departure because no plea bargain obligated it to do otherwise. The district court denied Ruiz's request for a "fast track" departure due to the absence of any plea agreement providing that benefit. We find that this showing, combined with defense counsel's consistent representations to the sentencing judge that Ruiz declined the plea bargain only because it contained a *Brady* waiver, is sufficient to warrant an evidentiary hearing to determine whether the Government declined to recommend a "fast track" departure because Ruiz refused to waive her *Brady* rights.[7]

■ The Government also argues that even if it opposed the departure because Ruiz refused to waive her *Brady* rights, the district court rejected her request for an altogether different reason. Specifically, the Government contends that the district court denied Ruiz's request for the "fast track" departure because it believed

---

7. The dissent would hold that Ruiz failed to make a "substantial threshold showing" because "there were other highly plausible, and more likely reasons why the prosecutor refused to move for the departure." Dissent at 2767, 2768. Nevertheless, based on the evidence presented, it is also plausible that the Government declined to make the "fast track" recommendation because Ruiz refused to waive her right to undisclosed *Brady* material. Ruiz need not demonstrate anything more to make a "substantial threshold showing" and secure the right to an evidentiary hearing on remand regarding this matter. *See Wade,* 504 U.S. at 186, 112 S.Ct. 1840.

The dissent also would hold that the constitutionality of the Government's *Brady* waiver "is wholly irrelevant to whether the prosecutor acted with an unconstitutional motive at sentencing." Dissent at 2769. However, if the *Brady* waiver were constitutional, Ruiz would have no basis for arguing that the Government withheld the "fast track" recommendation for an unconstitutional reason. *See Murphy,* 65 F.3d at 763 (finding no unconstitutional motive when prosecutor conditioned recommendation on waiver of waivable right to jury trial because no additional showing of prosecutorial vindictiveness). Therefore, the question of whether the *Brady* waiver is constitutional is not only relevant, it is integral to the determination of whether Ruiz has presented a "substantial threshold showing" that the Government acted with an impermissible motive.

that, without a plea agreement, Ruiz did not qualify for the departure. A district court's denial of a downward departure on this basis, however, does not insulate a prosecutor's underlying improper motive for failing to recommend a departure. *See Wade*, 504 U.S. at 185–86, 112 S.Ct. 1840 (district court precluded from denying downward departure based on government's refusal to recommend it if government did so for unconstitutional reasons).

We find that Ruiz has made a substantial threshold showing that the Government acted with an unconstitutional motive in refusing to recommend the "fast track" departure. Accordingly, Ruiz is entitled to an evidentiary hearing on remand concerning her constitutional claim.

## CONCLUSION

We vacate Ruiz's sentence and remand the case for resentencing. On remand, the district court shall conduct an evidentiary hearing to determine whether the Government withheld the "fast track" recommendation because Ruiz refused to waive her *Brady* rights. If the district court finds that the Government acted, at least in part, for this reason, it must then determine in its discretion whether to provide a remedy for the violation.

REVERSED AND REMANDED.

TASHIMA, Circuit Judge, concurring:

I concur fully in Judge Boochever's majority opinion. I write separately only to respond to two points made by the dissent.

In making its argument that we lack appellate jurisdiction in this case, the dissent criticizes the majority for relying "primarily on cases dealing with substantial assistance departures...." The dissent

mistakenly asserts that these cases are not relevant to our jurisdiction to hear this appeal. "Section 5K1.1 is different from other departures because a court generally may not order a downward departure under § 5K1.1 unless the prosecutor first moves for it. Most other downward departures, *including the fast track departure at issue here*, may be granted on motion of the defense and at the district court's discretion, regardless of the prosecutor's position." Dissent at 2765 (citing U.S.S.G. § 5K2.0) (emphasis added).

While it is true that there is no statutory requirement that "the prosecutor first move[ ] for it," it does not follow that a fast track departure may be granted at the district court's discretion, "regardless of the prosecutor's position." The reason that the prosecutor's position cannot, as a practical matter, be disregarded is because the fast track departure itself is extra-statutory, *i.e.*, it likely is not authorized by § 5K2.0, or any other provision of the Guidelines. Thus, if such a departure were granted in a case in which the prosecution was opposed to it, the prosecution could conceivably appeal the departure,[1] and would have strong ground to argue for a reversal.

The fast track "policy" of the United States Attorney for the Southern District of California provides for a two-level downward departure from the offense level otherwise calculated in accordance with the Sentencing Guidelines, if the defendant agrees to certain conditions, *i.e.*, waiver of indictment, plea of guilty, waiver of pretrial motions, and waiver of right to appeal.[2] It is highly doubtful, to say the least, that such a departure is authorized by the Guidelines.[3] A fast track departure

---

1. Granted, it would take real "chutzpah" for it to do so, but such chutzpah has been demonstrated before. *See United States v. Ramirez–Cortez*, 213 F.3d 1149, 1159 (9th Cir. 2000) (Silverman, J., dissenting).

2. It is important to note that this departure "policy" is a policy of the United States Attorney; it is not the policy of the United States Sentencing Commission or even of the district court.

3. The legality of the fast track departure is not at issue in this case and I do not directly address that issue. My only purpose in pointing out the doubtful legality of the fast track departure is to demonstrate why it is more appropriate to analogize to our substantial assistance cases, rather than to our § 5K2.0 departure cases, in terms of appellate jurisdiction and review.

is nowhere specifically authorized by the Guidelines.[4] It is also doubtful that the fast track departure can be justified under § 5K2.0, which authorizes only case-by-case departures in unusual cases, not wholesale departures on the basis of a district-wide "policy" of the prosecutor. *See* U.S.S.G. § 5K2.0 (Policy Statement) ("The decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis."). Further, to justify a departure under § 5K2.0, "certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Id.* *(Commentary)* (quoting *Koon v. United States,* 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). *Cf. United States v. Banuelos–Rodriguez,* 215 F.3d 969, 972–75 (9th Cir.2000) (en banc) (discussing why existence of a fast track departure policy in another district was not a proper ground for departure in the sentencing district which had no such policy). Yet, there is no requirement in the fast track departure policy of a finding that the case falls outside of the heartland of illegal reentry cases; indeed, the policy seems to target precisely the run-of-the-mill, heartland case.

For these reasons, as a practical matter, fast track departure cases are more like substantial assistance cases than other types of departures in that it would be highly unlikely that a court would feel free to exercise its doubtful discretion to grant such a departure in the absence of the government's agreement to do so. On the other hand, they are routinely granted when recommended by the government.[5] Thus, I submit that the dissent is mistaken

in its assumption that "the district court in departure cases relevant to the instant case can be presumed to know that it has discretion to depart because a motion by the prosecutor is not statutorily required." Dissent at 2766. While the dissent's presumption is rightly applied in cases clearly falling within § 5K2.0, it has no application with respect to the extra-statutory, fast track departure. I thus conclude that reviewability of the district court's failure or refusal to grant a fast track departure should be judged by the standards which we employ to determine whether a court's failure or refusal to grant a substantial assistance departure is reviewable. Under those cases, as the majority opinion correctly concludes, we have jurisdiction to review the district court's decision not to depart under the fast track policy in this case.

Finally, we are no less mindful of the extremely heavy workload in the Southern District of California than is the dissent. We disagree, however, with its alarmist prediction that this decision "jeopardizes the fast track program." Dissent at 2773. As the dissent itself points out, this is a "simple case," as are most § 1326 cases. *Id.* In such cases, there will usually be no more than one or two government witnesses and, in all likelihood, no impeachment material in the prosecution's possession. Thus, in most cases, compliance with the government's *Brady* obligation respecting impeachment material in its possession should not be onerous.

Increased prosecutorial efficiency is a commendable goal, but it surely should not be advanced at the cost of requiring the

---

4. U.S.S.G. § 3E1.1, which provides for a two or three-level downward adjustment of the offense level for early acceptance of responsibility, duplicates many of the factors on which the fast track departure is based. The extra-point decrease is given for "timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently." *Id.* § 3E1.1(b)(2). In the Southern District of California, the two-level, fast track departure

is given *in addition to* the § 3E1.1 adjustment.

5. The fast track policy can remain workable only so long as the parties can depend on the court to carry through with the government's bargain in the fast track plea agreement that, in return for reducing the government's prosecutorial burden, the defendant will receive the benefit of an extra two-level downward departure outside the parameters of the Guidelines.

accused to give up an unwaivable constitutional right. The appropriate solution to the Southern District of California's caseload crisis[6] is for Congress to authorize more judgeships, not to shortcut the Constitution.

TALLMAN, Circuit Judge, dissenting:

The Court today crafts a rule that is both unnecessary to the disposition of this case and detrimental to the ability of an overburdened and understaffed district to dispose fairly and expeditiously of criminal cases under the "fast track" program. I respectfully dissent.

## I. BACKGROUND.

Shortly after her arrest and initial appearance, the government offered Angela Ruiz, a "mule" caught red-handed carrying drugs across the border, a plea bargain. The agreement, if accepted, would have required her to file no motions other than certain sentencing memoranda, to plead guilty within 30 days of her initial appearance, and to waive her rights to an indictment and to non-exculpatory impeachment material.[1] In exchange, the government would argue at her sentencing hearing for a two-level fast track downward departure, which the sentencing court would have plenary discretion to grant or deny. Had she taken it, the district court would have achieved a quick disposition in a simple case. The parties would have been spared the time and expense of pre-trial proceedings and trial preparation. And the defendant would have received the benefit of a reduced sentence. But Ruiz chose to decline the government's offer to participate in the fast track program.

The prosecutor was forced to continue with the costly, time-consuming process of prosecuting her case. The grand jury proceeded to indict her. She was arraigned and a date for the motions hearing was set. Prior to the motions hearing, Ruiz's appearance bond was revoked and she was remanded to custody because she had tested positive for use of cocaine and PCP. Two months after her initial appearance, without reference to the fast track agreement previously offered by the government, Ruiz entered an unconditional plea of guilty.

Despite Ruiz's rejection of the fast track plea offer, at the sentencing hearing her counsel argued that she was entitled to a two-level fast track downward departure. The government opposed the motion. The trial court considered her argument and rejected it. She was sentenced within the guidelines range for the crime to which she had unconditionally pled guilty.

Ruiz now asks us to reverse the district court and to give her the benefit of the fast track agreement that she rejected despite the fact that she deprived the government of its benefit by forcing it to indict her and continue prosecuting her. She asserts that she is entitled to this benefit because requiring her to waive her right to impeachment information places an unconstitutional condition on her acceptance of the agreement.

Ruiz's counsel concocted this argument *post hoc* in an attempt to obtain for his client a second bite at the sentencing apple. Prior to sentencing, Ruiz did not object to the plea offer's requirement that she waive her right to impeachment material. The record is devoid of any evidence that she requested from the government

---

**6.** As the dissent points out, the weighted caseload per active judgeship in the Southern District of California was more than twice the median caseload of all districts in the Ninth Circuit. *See* dissent at 2773 n. 4.

**1.** Contrary to the majority's characterization, the government was not asking Ruiz to waive her rights to *Brady* information. In the standard plea agreement offered to Ruiz, the government acknowledges its ongoing obligation to give the defendant all information relating to factual innocence, and only requires the defendant to waive her rights to information that goes to impeachment of government witnesses. The government remains obligated to turn over all *Brady* material, including impeachment information that clearly falls under the *Brady* rule.

an agreement that did not contain such a waiver.

The majority, announcing today for the first time that the right to impeachment information is one of those rare constitutional rights that cannot be waived, has regrettably decided to give Ruiz another bite. I cannot join in this unprecedented decision.

## II. JURISDICTION.

We lack subject-matter jurisdiction to hear this case for two reasons. First, we do not have jurisdiction to review a district court's decision to deny a request for a downward departure. Second, Ruiz unconditionally pled guilty to the charge of marijuana importation. We have no jurisdiction to review a defendant's claim that her constitutional rights were violated if the alleged violation occurred prior to the entry of an unconditional guilty plea. We therefore cannot decide whether Ruiz can waive her rights to impeachment information.

### A. Jurisdiction to Review Ruiz's Sentence.

The majority characterizes Ruiz's claim as a challenge to the sentence based on the prosecutor's alleged unconstitutional motive in refusing to recommend the downward departure. With few exceptions, we lack jurisdiction to review a district court's decision not to depart. *See United States v. Morales,* 898 F.2d 99, 102 (9th Cir.1990).

### 1. The District Court's Discretion to Depart.

The majority relies primarily on cases dealing with substantial assistance departures in deciding that this case falls within an exception to the jurisdictional bar.[2] *See* Op. at 2774. *See also* U.S.S.G. § 5K1.1. These cases are not relevant to the type of departure requested by Ruiz. Section 5K1.1 is different from other departures

because a court generally may not order a downward departure under § 5K1.1 unless the prosecutor first moves for it. Most other downward departures, including the fast track departure at issue here, may be granted on motion of the defense and at the district court's discretion, regardless of the prosecutor's position. *See* U.S.S.G. § 5K2.0.

The requirement under § 5K1.1 that the prosecutor move prior to the district court having *authority* to depart is the underlying basis for the litigation that gives rise to the cases cited by the majority. Those cases deal with whether, if the prosecutor refuses for some reason to move for the departure, the district court has the authority to grant the departure notwithstanding the lack of a motion, as is required. *See, e.g., United States v. Khoury,* 62 F.3d 1138 (9th Cir.1995). In *Khoury* we held that if the defendant makes a "substantial threshold showing" that the prosecutor acted with an unconstitutional motive in refusing to move for a § 5K1.1 departure, the district court must conduct a hearing to determine whether such a motive existed and whether the departure should be granted despite the lack of a motion by the prosecutor. *Id.* at 1141. If the district court, without conducting a "substantial threshold showing" inquiry, concludes that it does not have discretion to depart, its decision is reviewable on appeal. *Id.*

If, however, the district court concludes that the defendant did not make a substantial threshold showing of unconstitutional motive, then the district court has no discretion to depart. *See United States v. Murphy,* 65 F.3d 758, 762 (9th Cir.1995). In such a situation, the only determination that is reviewable on appeal is whether the defendant made a substantial threshold showing of unconstitutional motive. *Id.* Finally, if the district court decides that it

---

**2.** A U.S.S.G. § 5K1.1 "substantial assistance" departure rewards a defendant for providing the prosecutor with material assistance in prosecuting the case against co-defendants or

investigating other related cases. Unlike a fast track downward departure, a substantial assistance departure does not reward a defendant for expediting resolution of her case.

has discretion to depart, and exercises that discretion by denying the departure, its decision is *not* reviewable on appeal. *See id.*

The presumption in § 5K1.1 cases is that the district court did not know that it had discretion to depart unless it clearly indicated that it did know. In contrast, the district court in departure cases relevant to the instant case can be presumed to know that it has discretion to depart because a motion by the prosecutor is not statutorily required. Although in cases not involving § 5K1.1 a district court may consider a prosecutor's arguments in favor of or against the departure when a prosecutor makes such an argument, the court has the discretion to depart and can do so *sua sponte.* We recently acknowledged: "To hold that government consent [to a departure] is a mandatory condition in cases other than those in which government consent is explicitly required by the Guidelines (as it is, for example, *in departures for substantial assistance*), . . . runs afoul . . . of the Guidelines themselves, by impermissibly shifting the locus of discretionary decisionmaking from the district judge to the prosecution." *United States v. Rodriguez–Lopez,* 198 F.3d 773, 778 (9th Cir.1999) (emphasis added).

Because other sentencing departures do not require the prosecutor to move, it makes sense to treat the district court's decision differently in cases that do not involve departures under § 5K1.1. We may presume in these cases, including in the instant case, that the district court knows what the law is and applies the law correctly even if it does not explicitly acknowledge that it has discretion and is exercising that discretion. *See United States v. Eaton,* 31 F.3d 789, 793 (9th Cir.1994) ("We have held that a court's failure to depart without any comment on its authority to do so does not automatically convert a discretionary departure into a sentence imposed in violation of law."); *United States v. Garcia–Garcia,* 927 F.2d 489, 491 (9th Cir.1991) (holding that a sentence imposed was not in violation of the law under § 3742(a) when the district

court said nothing about its discretion to depart and simply imposed the sentence without comment). *Cf. United States v. Cervantes–Valenzuela,* 931 F.2d 27, 29 (9th Cir.1991) ("We assume that the district court knows and applies the law correctly . . . ."). Thus, we only have jurisdiction to review decisions not to depart in § 5K2.0 departure cases if the district court explicitly states or clearly indicates that it believes it does not have discretion to depart.

In this case, a fair reading of the transcript does not indicate in any way that the district court believed that it was not authorized to make a departure in the absence of a government motion. Although the district court did question Ruiz about her rejection of the plea agreement, it never stated nor even implied that it could not depart on its own. It recognized its discretion not to depart even if the prosecutor had moved for the departure. It concluded:

> The Court has read and considered the presentence report, the sentencing documents filed on behalf of the Defendant, and the Court finds that the base level of the offense is 18. . . . [T]he Court feels that this is not a proper case for any departures except for provided for by the regular sentencing procedures.

This statement is sufficient to establish that the district court exercised discretion in refusing to grant Ruiz the downward departure she sought.

**2. The "Substantial Threshold Showing" Requirement.**

Even following the majority's new rule that the § 5K1.1 standard applies to fast track downward departures, Ruiz failed to make a "substantial threshold showing" that the prosecutor acted with an unconstitutional motive. To make a substantial threshold showing of unconstitutional motive, a defendant must show that the prosecutor was vindictively punishing her for exercising a constitutional right by refusing to move for the departure.

In *Khoury*, for example, the prosecutor initially moved for a substantial assistance departure at sentencing, but after the defendant withdrew his guilty plea, went to trial, and was found guilty, the prosecutor refused to make a new motion for substantial assistance. *Khoury*, 62 F.3d at 1139–40. We held that this constituted a substantial threshold showing of unconstitutional motive because nothing had changed between the first sentencing hearing and the second, other than the trial, that would reasonably lead the prosecutor to no longer believe that the defendant had offered substantial assistance. *Id.* at 1142. From this, the district court in *Khoury* could infer that the prosecutor was punishing the defendant for exercising his right to trial, thus justifying a hearing to make a determination as to whether the prosecutor acted improperly. *Compare id. with Murphy*, 65 F.3d at 763 (holding that the defendant did not meet the substantial threshold showing merely by offering evidence that the prosecutor threatened to withhold a § 5K1.1 motion if the defendant went to trial, and then carrying out that threat).

Unlike *Khoury*, where the only reasonable inference was that the prosecutor was punishing the defendant for exercising his right to trial, here there were other highly plausible, and more likely reasons why the prosecutor refused to move for the departure. Ruiz did not plead within thirty days from the initial appearance and she did not waive her right to an indictment. The government invested more time and work in preparing Ruiz's case than would have been required if Ruiz had accepted the plea agreement and pled within the time constraints, even without the impeachment waiver.

The very purpose of the fast track downward departure is to expedite the plea process and dramatically reduce the workload of the federal prosecutors, public defenders, and the district court. In exchange for expediting the resolution of the District's pending cases, the defendant receives a two-level downward departure at sentencing. Once everyone is required to put more time and effort into the case, as was necessary here, the reason for offering the departure is thwarted. The record supports the conclusion that this is the legitimate reason for the prosecutor's opposition to the downward departure in Ruiz's case ("[W]e [the government] are giving up all the benefits that would normally come with the fast track departure.").

Moreover, the record is devoid of any evidence that Ruiz told the prosecutor at the time of the offer that she was rejecting it because of the impeachment waiver. Nor does the record show that she attempted to negotiate away the waiver but was rebuffed. Such evidence, along with the prosecutor's refusal to move, may have been sufficient to satisfy the "substantial threshold showing" standard, but none was offered. The only evidence in her favor before us is that she was offered the departure and refused it, later pled guilty, and then the prosecutor opposed her motion for the fast track downward departure. That evidence is insufficient to entitle her to a hearing under *Khoury*.

### 3. The Distinction Between Unconstitutional Motive and Unconstitutional Waiver.

The majority further complicates matters by mistakenly conflating two distinct constitutional challenges present in this case. It is asserted that, in order to make her claim for unconstitutional motive, Ruiz must show that the impeachment waiver was unconstitutional. But whether Ruiz could or could not waive her rights to the impeachment information is wholly irrelevant to whether the prosecutor acted with an unconstitutional motive at sentencing.

To illustrate this principle, one need only look at the facts in *Khoury*. 62 F.3d at 1138. The issue there was not whether Khoury could waive his right to trial. He undoubtedly could. Rather the issue was whether the prosecutor acted unconstitutionally by opposing a motion for a downward departure at sentencing solely be-

cause Khoury opted to exercise his right to a trial. *Id.* at 1142. We concluded that a prosecutor cannot act vindictively in refusing to move for a downward departure because a defendant wishes to exercise her constitutional rights. *Id.*[3]

Likewise in this case, if the problem was really with the prosecutor's actions at the sentencing hearing, then whether Ruiz could or could not waive her right to impeachment information is irrelevant to whether the prosecutor acted with an unconstitutional motive at sentencing. In other words, even if Ruiz could waive her impeachment rights (as Khoury could waive his right to trial), Ruiz might still have a claim for unconstitutional motive against the prosecutor, following the majority's new rule that the "substantial threshold showing" standard applies in fast track departure cases.

The only way to reach the issue of whether impeachment rights are waivable is through a direct challenge to the plea offer, not by challenging the sentence. We do not have jurisdiction on this record to entertain a direct challenge to the waiver.

**B. Jurisdiction to Review the Impeachment Waiver.**

"An *unconditional* guilty plea constitutes a waiver of the right to appeal all non-jurisdictional antecedent rulings and cures all antecedent constitutional defects." *United States v. Floyd,* 108 F.3d 202, 204 (9th Cir.1997) (emphasis in original). The Supreme Court has made it clear that a defendant, after admitting in open court that she is guilty, may not raise a claim that her constitutional rights were violated before she entered the plea. *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). She may challenge her plea only by demonstrating that it was not made voluntarily and intelligently. *Id.* She may do this by showing that her counsel was ineffective in giving her advice regarding the guilty plea, *id.,* or by demonstrating that her plea was made without the benefit of *Brady* material that the prosecution deliberately withheld without her knowledge. *See Sanchez v. United States,* 50 F.3d 1448, 1453 (9th Cir.1995).

The Court in *Tollett* made it clear that the primary inquiry is whether the plea was entered into voluntarily and intelligently. *Tollett,* 411 U.S. at 266, 93 S.Ct. 1602. Even if the alleged unconstitutionality was *unknown* to the defendant at the time she entered the unconditional plea, she is not entitled to appellate review unless she can make a showing that the plea was not made voluntarily or intelligently. *Id.*

The only way for Ruiz to challenge the impeachment waiver is by challenging her plea. And she can only challenge her plea by demonstrating that it was not made

---

3. The majority argues that "if the *Brady* waiver were constitutional, Ruiz would have no basis for arguing that the government withheld the 'fast track' recommendation for an unconstitutional reason." Op. at 2757 n. 7. Ruiz's basis for arguing that the government acted unconstitutionally in refusing to recommend the fast track departure would be that the prosecutor was punishing Ruiz for exercising her constitutional right to receive impeachment information, *whether or not that right is waivable. See Murphy,* 65 F.3d at 763 (holding that the defendant was required to present objective evidence that the prosecutor's decision to refuse a § 5K1.1 recommendation was "motivated by a desire to punish him for exercising his [waivable] right to trial"); *Khoury,* 62 F.3d at 1138 (holding that a prosecutor acts with an unconstitutional mo-

tive by refusing to recommend a downward departure in order to punish a defendant for exercising his *waivable* right to a jury trial).

I do not believe that Ruiz has made a substantial threshold showing that the prosecutor acted with a motive to punish her for exercising her right to receive the undisclosed material, whether or not that right is waivable. The majority disagrees. But the majority, by further holding that Ruiz *cannot* waive her right to receive what it mistakenly characterizes as *Brady* information, transforms this case from a minor dispute about the application of firmly established law to a distinct set of facts, to a new constitutional rule that once presumably waivable rights are now unwaivable. This transformation is wholly unnecessary to the resolution of the case and sets a dangerous precedent.

voluntarily or intelligently-that is, by demonstrating (1) that she made the plea without the benefit of the impeachment material and (2) that the impeachment material would have affected her decision to plead guilty. *See Sanchez*, 50 F.3d at 1453–54. But she did not accept the government's plea offer. She has never alleged that she did not receive the impeachment material and we may presume in the absence of such an allegation that this information (if it even existed) was not kept from her.

The majority attempts to evade the *Tollett* rule by characterizing the unconstitutional act as the prosecutor's refusal to move for the downward departure at sentencing. Because the refusal occurred after the plea was entered, the majority argues, the *Tollett* rule precluding appellate review of antecedent constitutional defects is inapplicable.

As demonstrated in *Khoury*, however, Ruiz's complaint about the sentence imposed does not depend upon the waivability of her rights to impeachment information. The alleged unconstitutionality of the prosecutor's actions at sentencing are entirely distinct from the alleged unconstitutionality of the impeachment waiver that she never complained of before unconditionally pleading guilty.

Her complaint with regard to the waiver can only be that the prosecutor unconstitutionally conditioned the two-level downward departure on her waiving her unwaivable right to impeachment material. But the prosecutor requested this condition at the time of the plea offer, not at the time of sentencing. The constitutional defect, if any, occurred prior to the entry of the unconditional guilty plea. Thus, the *Tollett* rule applies, and Ruiz waived any challenge she may have had to the alleged unconstitutional conditioning of the downward departure on the impeachment waiv-

er. Accordingly, we lack jurisdiction to review both Ruiz's sentence and the constitutionality of the impeachment waiver.

## III. THE POLICY IMPLICATIONS OF THE NEW RULE.

In addition to the jurisdictional bar to our review, the Court's decision makes little sense from a policy standpoint. The government has an interest in maintaining the confidentiality of government witnesses and protecting ongoing investigations into other drug courier cases. We should not unnecessarily create a new rule that forces the government to turn over information to a defendant immediately upon beginning plea bargain negotiations, when that information will generally be of little use to the defendant unless she goes to trial. This disclosure is especially problematic when the release of the information could have detrimental consequences in future criminal proceedings, as it would, for example, if the government were required to publicly release information on the identity of an informant that it would like to keep confidential for as long as possible.

Perhaps most importantly, the majority's decision jeopardizes the fast track program, which, to this point, has been a highly successful way of resolving, prior to indictment, these types of cases in the Southern District of California. Through the fast track program the District has been able to dramatically expedite the processing of its heavy workload[4] by encouraging defendants in simple cases like this to plead very early in the process, waive indictment, and promise not to file any motions other than sentencing memoranda.

By also asking a defendant to waive her right to impeachment information, the

---

4. According to the 1999 Annual Report for the Ninth Circuit, the weighted total of filings per judgeship in 1998 was 1,030. *See* 1999 Annual Report for the Ninth Circuit at 52. The mean total for all district judges in the Ninth Circuit was almost half that of the Southern District of California, at 530 filings per judgeship, and the median was less than half, at 481 filings per judgeship. *Id.* The next busiest district, the District of Arizona, had total filings per judgeship of 814, over 200 filings per judgeship less than the Southern District of California. *Id.*

prosecution can save itself from the often time-consuming process of determining which witnesses it may call at trial, what potential impeachment information on each witness is in its possession, and whether it must disclose that information to the defendant. This time-saving aspect is one of the reasons underlying the Jencks Act. 18 U.S.C. § 3500.

Because the majority holds the impeachment waiver unconstitutional, despite the fact that it lacks jurisdiction to do so, it dramatically reduces the efficacy of the fast track program. The government no longer has an incentive to offer the departure if the plea agreement does not significantly reduce the District's workload. Thus, the majority's new rule delays the efficient handling of cases that should be disposed of promptly to the benefit of everyone.

## IV. CONCLUSION.

We lack jurisdiction to review Ruiz's sentence. More importantly, we lack jurisdiction to issue an unprecedented rule that defendants may not waive their rights to impeachment material. This brand new rule harms the administration of justice. I respectfully dissent.