**UNITED STATES OF AMERICA,**
**Plaintiff—Appellee,**

v.

**Eliazar VALENZUELA–ALVARADO,**
**aka Eliazar Valencia–Alvarado,**
**Defendant—Appellant.**

**No. 00–10420.**
**D.C. No. CR–99–00902–ROS.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 2002.

Decided April 22, 2002.

Before GOODWIN, THOMAS, and W. FLETCHER, Circuit Judges.

MEMORANDUM *

As the facts are known to the parties, we do not recite them here. For the reasons that follow, we · affirm the district court's judgment and sentence.

Valenzuela argues that because he has a limited education, his *Miranda* waiver was not valid. To be valid, a waiver of rights must be voluntarily, knowingly, and intelligently given. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Doe,* 170 F.3d 1162, 1168 (9th Cir.1999). We must accept the district court's factual finding of knowing and intelligent waiver unless clearly erroneous. *Doe,* 170 F.3d at 1168.

█ Valenzuela does not argue that he was coerced or threatened so as to render his waiver involuntary; rather, he argues that, given his educational and cultural background, his waiver was neither knowing nor intelligent. Agent Martin read Valenzuela his *Miranda* rights in Spanish, and he told her, in Spanish, that he understood those rights. He signed the Spanish form stating that he understood his *Miranda* rights and that he waived those rights. Valenzuela does not dispute this. Therefore, we must find that his waiver was knowing and intelligent. *See United*

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

States v. Bautista–Avila, 6 F.3d 1360, 1366 (9th Cir.1993) (citing cases where a defendant's statement during interrogation that he understood *Miranda* rights and waived them precluded argument that waiver was not knowing and voluntary).

Valenzuela next argues that his confession should have been suppressed because it was written in English. Agent Martin interviewed him in Spanish, the only language Valenzuela speaks and understands. However, the confession that Valenzuela signed was written in English. Agent Martin read the written confession to him, translating it back into Spanish as she did so. Valenzuela does not contest the accuracy of Martin's translation into Spanish or of the English language confession. Rather, he argues that the fact that he signed a confession written in a language that he does not speak, read, or understand renders the confession presumptively invalid.

In *Walters v. Reno*, 145 F.3d 1032 (9th Cir.1998), we rejected the notion that the INS is required to make written material available to detained immigrants in their native language. We stressed that although the INS has a duty to "simply and plainly communicate the necessary information and advice to the aliens against whom it brings charges," it is "appropriate to leave it to the INS to determine in the first instance how best to" do so. *Id.* at 1035 (internal quotations omitted). Because Valenzuela does not challenge the accuracy of his confession as written in English, or of the oral Spanish translation provided to him, we cannot say that the government failed in its duty to ensure that he understood the content of the confession he signed. Our conclusion is bolstered by the fact that Valenzuela had the opportunity to cross-examine Agent Martin at trial, ensuring that any claimed inaccuracies in the confession or any deficiencies in her translation could be brought to light. *See United States v. Iribe*, 11 F.3d 1553, 1557 (10th Cir.1993) (holding that a consent to search form was valid and admissible even though it was written in English and had been signed by a person who only spoke Spanish; because the investigating detective verbally translated the form into Spanish, the consent could be considered "intelligently given").

We also affirm the sentence imposed by the district court. Although we may not review the district court's discretionary refusal to depart from the Sentencing Guidelines, 18 U.S.C. § 3742; *United States v. Ruiz*, 241 F.3d 1157, 1161–62 (9th Cir. 2001), we may review Valenzuela's claim that the district court failed to exercise any discretion at all in rejecting a downward departure. *Ruiz*, 241 F.3d at 1162. The district court's interpretation of the sentencing guidelines is reviewed de novo. *United States v. Jordan*, 256 F.3d 922, 926 (9th Cir.2001).

Valenzuela never requested a downward departure. Rather, counsel asked for a sentence at the bottom end of the guideline range. The district judge clearly considered the request and decided that Valenzuela did not deserve the low end of the range. Thus, her imposition of a sentence at the high end of the range is a discretionary decision which we lack jurisdiction to review. We think it is clear from the record that the district judge chose not to depart downward. "A district court need not say affirmatively that it had discretion to depart." *United States v. Lipman*, 133 F.3d 726, 731 (9th Cir.1998) (internal quotation omitted).

Finally, Valenzuela argues that the November 2001 amendments to the Sentencing Guidelines should be applied to him. He notes that the 2001 amendments were adopted in recognition of the fact that the prior aggravated felony scheme, under which he was sentenced, was unduly harsh in that it did not take account of the

seriousness of the prior felony and the dangerousness of the offender. The Sentencing Guidelines generally provide that the sentencing court "shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a). The Guidelines do provide that in some cases, when a defendant is serving a prison term and the applicable guideline range is subsequently lowered as a result of an amendment to the Guidelines, a reduction in the prison term is authorized under 18 U.S.C. § 3582(c)(2). *See* U.S.S.G. § 1B1.10(a) and § 1B1.10(c) (listing amendments that may be used to reduce prison terms). However, the amendment to § 2L1.2 to which Valenzuela refers, amendment 632 (see Historical Note to § 2L1.2) is not included in the list of amendments in § 1B1.10(c). There is no support in the Guidelines for Valenzuela's argument that the amendment to § 2L1.2 should be retroactively applied to him.

AFFIRMED.