**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOEL LEON THOMAS, JR.,
*Defendant-Appellant.*

No. 14-10427

D.C. No.
2:12-cr-00523-DGC-2

OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted April 15, 2016
San Francisco, California

Filed December 20, 2016

Before: J. Clifford Wallace, Mary M. Schroeder,
and Alex Kozinski, Circuit Judges.

Opinion by Judge Schroeder;
Dissent by Judge Kozinski

## SUMMARY[*]

### Criminal Law

The panel affirmed a conviction and sentence for multiple counts of conspiracy, armed bank robbery, and use of a firearm during a crime of violence.

The panel rejected the defendant's contentions that there was insufficient evidence to establish that each of the banks was FDIC insured and that there was insufficient evidence to show that the defendant knew of and planned for the use of guns during the robberies. The panel held that the district court did not abuse its discretion in admitting evidence of the defendant's gun ownership, and that there was no Fourth Amendment violation in the seizure and search of the defendant's cell phone. The panel held that the district court utilized Fed. R. Crim. P. 29(b) according to its terms in delaying a ruling on the defendant's motion for acquittal until after the close of his case.

The panel held that while the district court had discretion to impose a lower sentence on the robbery and conspiracy counts, it was not required as a matter of law to reduce the sentence to counter the effects of the consecutive 32-year mandatory minimum sentence for the two use-of-firearm convictions, and that the 49.5-year total sentence imposed was therefore not substantively unreasonable.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Dissenting in part, Judge Kozinski wrote that the district judge mistakenly believed he was required to calculate the Guidelines portion of the sentence as if it were a stand-alone sentence, rather than as one component of a combined sentence, which is a major procedural error that requires reversal; and that the sentence is also substantively unreasonable.

## COUNSEL

Florence M. Bruemmer (argued), Law Office of Florence M. Bruemmer PC, Anthem, Arizona; Anders V. Rosenquist, Rosenquist & Associates, Anthem, Arizona; for Defendant-Appellant.

Rachel C. Hernandez (argued), Assistant United States Attorney; Krissa M. Lanham, Deputy Appellate Chief; John S. Leonardo, United States Attorney; United States Attorney's Office, Phoenix, Arizona; for Plaintiff-Appellee.

## OPINION

SCHROEDER, Circuit Judge:

Joel Thomas, Jr. appeals from the judgment following his jury conviction and sentence for multiple counts of conspiracy and armed bank robbery. He received a total sentence of 49.5 years, and challenges both the conviction and the reasonableness of the sentence.

His challenges to the conviction can be easily dealt with. The sentence raises more difficult issues. This is because 32

years of the total 49.5 year sentence were required to be imposed, consecutive to any other sentence, as a result of statutory, mandatory minimums over which the district court had no discretion. The remaining sentence of 17.5 years was imposed at the low end of the Sentencing Guidelines range pursuant to calculations that are not challenged. Those calculations included enhancements for obstruction of justice and the abduction of bank employees, as well as for Thomas's leadership role in all of the robberies. We affirm.

## BACKGROUND

The novel twist in this case is that the defendant was a bank teller whose string of robberies included the banks where he worked and hence had inside information. From October 2010 through March 2012, Thomas was employed as a teller, first at a Wells Fargo Bank in Sun City, Arizona and then at a Chase Bank in nearby Peoria, Arizona; he robbed both banks.

In early August 2011, Thomas and a friend, Billy Brymer, began planning the bank robberies. Thomas made the robberies possible by providing inside information on the banks, their security practices, floor plans, and degree of customer usage during various parts of the day. Brymer had no particular knowledge of banks or banking, but recruited two homeless men, McQueen and Brown, as well as two men from California, Bagley and Edwards, to assist in the actual robberies. Thomas recruited a friend to serve as lookout during one of the robberies in exchange for a car and money.

Thomas and Brymer planned at least two of the robberies as armed robberies, and together purchased the weapons that

were actually used.  Thomas chose the banks that were robbed.

The first armed robbery occurred on January 21, 2012, at the Sun City Wells Fargo branch where Thomas had worked earlier.  Bagley and Edwards participated in the robbery, according to Thomas's plan.  After entering the bank, Edwards pointed a gun at a bank employee and demanded access to the vault, acting on Thomas's earlier instructions. When access to the vault was not possible because no manager was available to open it, Edwards demanded money from the tellers and came away with approximately $7,200.

The second robbery occurred on February 25, 2012, at a Wells Fargo branch chosen by Thomas.  This robbery was not armed.  With Thomas's help, Brymer wrote the demand note that McQueen handed to the teller.  After the robbery, the robbers met with Brymer and Thomas and divided the money.

The third robbery, which was armed, occurred on February 29, 2012, at the Chase Bank in Peoria where Thomas was then working.  It was part of Thomas's employment duties to signal to the bank manager that there was no suspicious activity that might prevent the bank's opening.  On the day of the robbery, as the manager, on Thomas's signal, opened the door, Brymer entered the bank, pointed a gun at the manager, and demanded money. Thomas stood by during the entry and handed Brymer the bag in which to carry away the money.  That robbery yielded proceeds of more than $240,000.

Immediately after the robbery, police arrived at the bank to investigate and assumed that both the manager and Thomas were victims of the robbery.  Thomas's excessive use of his

cell phone led police to suspect that Thomas might be involved in the robbery. They asked him to turn over his phone, and he did so. In interviewing Thomas, the police became more suspicious because of his inability to answer basic questions about the appearance of the robber. After obtaining a search warrant for his home, car, and phone, the police found in his bedroom a loaded Glock 9 mm semi-automatic handgun and ammunition. In Thomas's car was another semi-automatic handgun and notes with the work schedule of bank employees, as well as a hand-drawn floor plan of the Chase Bank. The search of the phone yielded text message exchanges between Thomas and Brymer immediately following the robbery when police were on the scene, and also disclosed Thomas's efforts to delete those messages.

Thomas was arrested after the execution of the warrants. Thomas then spoke to agents and admitted his role in the planning of the robberies and the purchase of weapons; his statements became evidence used to impeach him during the trial. The jury convicted him on three counts of conspiracy to commit bank robbery, two counts of armed bank robbery, one count of bank robbery, and two counts of use of a firearm during a crime of violence under 18 U.S.C. § 924.

The two counts of use of a firearm during a crime of violence resulted in mandatory minimum consecutive terms amounting to 32 years. For the six underlying counts of conspiracy and robbery, the district court sentenced him to 210 months, the low end of the Guidelines range.

The principal challenges to his conviction include the sufficiency of the evidence to establish that the banks were FDIC insured as required under 18 U.S.C. § 2113(a), and to

establish his knowledge of the use of weapons in the robberies. He also raises some evidentiary and procedural objections. With respect to the sentence, Thomas's only contention is that it was unreasonable. *See* 18 U.S.C. § 3742.

## DISCUSSION

### I. The Conviction

We deal first with challenges to the conviction. Thomas avers that there are two reasons why there was insufficient evidence for a rational jury to convict him, but his arguments are unavailing. On the bank robbery counts, Thomas asserts that there was insufficient evidence to establish that each of the banks was FDIC insured. *See United States v. James*, 987 F.2d 648, 650 (9th Cir. 1993) (requiring the government to "prove that the money taken was from a bank insured by the FDIC"). Bank employees with knowledge of the insurance status testified as to each bank, however, and their testimony was corroborated by each bank's certificate of insurance. As to the use of a firearm, Thomas claims, for the first time on appeal, that his conviction for armed bank robbery and use of a firearm during a crime of violence were unsupported because there was insufficient evidence to show that he knew of and planned for the use of guns during the robberies. We need not address the argument at length as it was never raised below, and is belied by the record of his extensive involvement in acquiring the weapons and planning for their use.

Thomas argues that the district court abused its discretion in admitting evidence of Thomas's gun ownership. Federal Rule of Evidence 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by

the danger of unfair prejudice.  Fed. R. Evid. 403.  The relevance of this evidence was high, and the risk of unfair prejudice low.  The two guns Brymer bought were the same type of guns owned by the defendant, the defendant was with Brymer when he bought them, and Brymer had no previous knowledge of guns.  The district court did not abuse its discretion.

Thomas contends that he did not consent either to the seizure or to the search of his cell phone.  It appears, however, that Thomas voluntarily handed over the phone. The police asked him to turn over his phone while he stood unrestrained outside the Chase Bank.  *See United States v. Reid*, 226 F.3d 1020, 1026 (9th Cir. 2000).  Further, the police made the request without drawing any weapons.  *Id.* Even if the initial seizure of the phone had lacked consent, there was no error because law enforcement obtained a search warrant before searching the contents of the cell phone that produced the evidence introduced at trial.  *See Segura v. United States*, 468 U.S. 796, 813–14 (1984).  The Fourth Amendment was not violated.

Thomas asserts that the district court erred in delaying a ruling on his motion for acquittal until after the close of his case. Federal Rule of Criminal Procedure 29(b) provides that a district court "may reserve decision" on an acquittal motion and "decide the motion either before the jury returns a verdict of guilty or is discharged without having returned a verdict." Fed. R. Crim. P. 29(b).  Here, the district court utilized Rule 29(b) according to its terms.

## II. The Sentence

The only remaining issue is the reasonableness of Thomas's sentence under 18 U.S.C. § 3742, the statute authorizing appellate review of sentences. Thomas argues that his sentence was unreasonably high.

In imposing the 49.5 year sentence, the experienced district judge was well aware of the impact of the mandatory minimum sentences. Indeed, the district judge expressly said that he believed that the total 32 year mandatory minimum for use of a firearm in this case was excessive, but recognized that he had no discretion with respect to its imposition. Thomas agrees. In imposing the sentence on the robbery and conspiracy counts themselves, the district judge concluded that the within-range 17.5 year sentence, under all the circumstances, was not unreasonable. We agree, but Thomas does not.

For a full understanding of the way in which the mandatory minimums, Guidelines calculations, and enhancements played out in this case, we go through the calculations underlying the sentence in some detail.

### A. The Two Statutory, Mandatory Minimum Sentences For Use of a Firearm

Thomas's crimes included two armed robberies. Congress has determined that a minimum term of 7 years must be imposed for the use of a firearm in a crime of violence. 18 U.S.C. § 924(c)(1)(A)(ii). In the case of a second conviction for the use of a firearm in a crime of violence, Congress has imposed a minimum sentence of 25 years. 18 U.S.C. § 924(c)(1)(C)(i). The parties in this case

do not dispute that robbery is a crime of violence. 18 U.S.C. § 924(c)(3)(D). Because a firearm was used in the January 21 robbery, Thomas received a minimum sentence of 7 years. For the use of a firearm in the February 29 robbery, Thomas received a minimum sentence of 25 years. The mandatory minimum sentences are to be served consecutively, and are in addition to the sentences for the underlying crimes. 18 U.S.C. § 924(c)(1)(D)(ii) ("no term of imprisonment on a person under this [statute] shall run concurrently with any other term of imprisonment imposed on the person").

## B.  The Sentences for the Six Underlying Robbery and Conspiracy Counts

While the court had no discretion with respect to the mandatory minimums, *see United States v. Valente*, 961 F.2d 133, 134 (9th Cir. 1992), the district court had some discretion in sentencing Thomas for the six underlying counts of robbery and conspiracy. The Guidelines are advisory, *see United States v. Booker*, 543 U.S. 220, 243–44 (2005), and set forth sentencing ranges. The district court chose to sentence Thomas at the low end of the applicable Guidelines range.

The Guidelines calculation begins with an examination of the defendant's criminal history. *See* U.S.S.G. § 4A1. Thomas was assigned the lowest criminal history category because of his limited criminal record. When he was 14, he was arrested for putting his fist through a door. The records for this offense have been purged. When Thomas was 18, he was convicted of disturbing the peace, but it was a misdemeanor. His criminal history category was I. *See* U.S.S.G. §§ 4A1, 5A.

The Guidelines call for related counts to be grouped together.  *See* U.S.S.G. § 3D1.2.  In this case, the underlying counts were put in groups representing each of the robberies.  Group 1 included the conspiracy to commit bank robbery and armed bank robbery of the Wells Fargo Bank in Sun City, Arizona.  Group 2 included the conspiracy to commit bank robbery and bank robbery of the Wells Fargo Bank in Surprise, Arizona.  Group 3 included the conspiracy to commit bank robbery and armed bank robbery of the Chase Bank in Peoria, Arizona.  According to the Guidelines, the base offense level for each of these Groups was 20.  U.S.S.G. § 2B3.1(a).

The Guidelines then call for consideration of the nature of the crimes and the defendant's role in them.  *See* U.S.S.G. §§ 2B3.1(b), 3B1.1.  Because the property of a financial institution was taken, two levels were added to all Groups.  U.S.S.G. § 2B3.1(b)(1).  Because Thomas was the organizer or leader of a criminal activity that involved five or more participants, four levels were added to all Groups.  U.S.S.G. § 3B1.1(a).  Because bank employees were abducted in their commission, four levels were added to Groups 1 and 3, the armed robberies.  U.S.S.G. § 2B3.1(b)(4)(A).  Because the amount of loss was $246,952.92 (more than $95,000 and less than $500,000) in the Chase Bank armed robbery, two levels were added to Group 3.  U.S.S.G. § 2B3.1(b)(7)(C).

The Guidelines sentence must be computed on the basis of a single offense level, so the court had to determine an adjusted offense level, taking into account the levels for all relevant groups.  U.S.S.G. § 3D1.4.  In order to determine the adjusted offense level, the court must identify the offense level applicable to the most serious Group.  *See* U.S.S.G. § 3D1.3.  In this case, the Chase Bank robbery was the most

serious because the greatest amount of money was taken. To take into account the other Groups and the extent to which they were comparable in seriousness to the Chase Bank Group, various adjustments were made that are not disputed here. This brought the combined adjusted offense level to 35. *See* U.S.S.G. § 3D1.4.

Given a total offense level of 35 for the six counts of conspiracy to rob and robbery of the banks, and a criminal history category of I, the Guidelines imprisonment range, as calculated in the pre-sentence report, was 168 months to 210 months. U.S.S.G. § 5A. Its correctness is not disputed. The district court then found that Thomas committed perjury when he testified during his trial. The district court therefore added a two point enhancement for obstruction of justice to the combined adjusted offense level. U.S.S.G. § 3C1.1. This is not challenged on appeal. The new offense level was thus 37.

On the basis of a total offense level of 37 and a criminal history category of I, the Guidelines imprisonment range was 210 months to 262 months. The district court sentenced at the low end, and Thomas received a total sentence of 210 months on the six underlying robbery and conspiracy counts.

At sentencing, defense counsel had asked for a reduction below the Guidelines range on the underlying counts, but the court responded that the low end of the Guidelines range in this case was a reasonable sentence for convictions of conspiracy to rob and robbery of three different banks, in all of which Thomas played the major organizational role.

By statute, the sentence had to be imposed to run consecutively to the statutory, mandatory minimums. *See*

18 U.S.C. § 924(c)(1)(D)(ii). The mandatory minimums totaled 32 years. This brought the total sentence to 49.5 years.

On appeal, although none of the calculations are challenged, Thomas contends the resulting sentence was substantively unreasonable. He argues that a 49.5 year sentence is disproportionate to the crimes for which he was convicted. We conclude that the district court did not err in imposing the sentence it did.

In reaching this conclusion, we are mindful that the district court had no discretion whatsoever to disregard the impact of the statutory, mandatory minimums. *See Valente*, 961 F.2d at 134. Since the Guidelines are advisory, *see Booker*, 543 U.S. at 243–44, the court's only discretion lay in the imposition of Guidelines sentences for the conspiracies and robberies themselves. And here, it sentenced at the low end of the Guidelines range.

The dissent argues, as Thomas did, that the district judge misunderstood his discretion to sentence Thomas below the Guidelines range for the conspiracy and robbery convictions. The record plainly belies this contention; the experienced and distinguished district judge made clear his view that "210 months is the right sentence for three bank robberies and three conspiracies to commit bank robberies." While twice acknowledging that the district court had the discretion to lower that sentence "to sort of balance it all out" in light of the mandatory minimums, the judge explained that he did not "feel comfortable" doing so.

The Supreme Court has told us that, in reviewing sentences, we must determine first, whether there were any

procedural errors made by the district court in its calculations, or in its consideration of the appropriate factors pursuant to 18 U.S.C. § 3553(a), before we consider whether or not the sentence is substantively reasonable. *See Gall v. United States*, 552 U.S. 38, 51 (2007). The parties agree that there were no procedural errors or failure to consider appropriate factors, so the only question is whether the sentence was substantively reasonable.

The Supreme Court has further instructed that, in reviewing whether a sentence is substantively reasonable, we are to consider the totality of the circumstances. *Id.* The Court cautioned that in doing that, courts must take into account the degree of variance from the sentencing guidelines in cases where a sentence is outside the applicable Guidelines range. *Id.* at 47. Here, there was no variance from the applicable range. This is an indicator that the sentence is reasonable. *See Rita v. United States*, 551 U.S. 338, 347–51 (2007). Moreover, in reviewing Guidelines sentences for reasonableness, our court has recognized that a within-Guidelines sentence will usually be reasonable. *United States v. Carty*, 520 F.3d 984, 994 (9th Cir. 2008).

Congress requires the Guidelines sentence be imposed consecutive to the mandatory minimums, 18 U.S.C. § 924(c)(1)(D)(ii), and Congress intended the Guidelines sentence itself to reflect the empirical data underlying the practice of judges in applying the § 3553 factors. *See Rita*, 551 U.S. at 347–51 (2007). Here, the mandatory minimums represent enhancements or additions to the Guidelines sentence because firearms were used. The minimums must be served consecutively to the sentence for the underlying crimes, and the underlying Guidelines sentence was computed by taking into account the characteristics of those

crimes. The district court, in turn, took into account the factors it was required to consider pursuant to 18 U.S.C. § 3553. The Supreme Court has said it is permissible for appellate courts to presume that a within-Guidelines sentence is reasonable, *see Rita*, 551 U.S. at 347–51. Our court does not employ such a presumption, but we recognize that we will seldom reverse a within-Guidelines sentence if it is correctly calculated. *Carty*, 520 F.3d at 994.

The troublesome issue in this case arises because the mandatory minimums must be combined with the sentence imposed on the underlying crimes, to create a very long sentence. Yet this does not make the sentence unreasonable within the meaning of 18 U.S.C. § 3742. We have expressly so recognized. We have held that the district court must impose a mandatory minimum sentence even if doing so "makes it impossible for the judge to impose a total sentence that the court considers reasonable." *United States v. Washington*, 462 F.3d 1124, 1140 (9th Cir. 2006). And to require that a district court reduce a defendant's Guidelines sentence to counter the effects of mandatory minimums would be contrary to congressional intent that the Guidelines sentence reflect the objectives of 18 U.S.C. § 3553(a). *See Rita*, 551 U.S. at 347–51.

The parties cite only one case in which the mandatory minimum itself was so long that the district court reduced the sentence for the underlying crime. *See United States v. Dare*, 425 F.3d 634 (9th Cir. 2005). There, however, the underlying crime of possession of marijuana was not a serious offense. In *Dare*, the district court found the ten year mandatory minimum sentence itself to be outrageous, but correctly observed it had no discretion to change it. *Id*. at 637. The

court imposed a sentence of zero for the underlying offense and the sentence was not at issue in the appeal.

Here, in contrast, the underlying crimes are serious, and no one suggests Thomas should go unpunished for them. Thomas plotted, organized and facilitated three robberies involving weapons and threats of harm to many employees and bank customers. We must respect both the district court's exercise of discretion in imposing the sentence on the underlying crimes and the court's lack of discretion in imposing the mandatory minimums which are actually responsible for the length of the sentence. While the district court had the discretion to impose a lower sentence on the robbery and conspiracy counts, it was not required as a matter of law to reduce Thomas's sentence to counter the effects of the mandatory minimums. We must conclude that the sentence imposed was therefore not substantively unreasonable.

**AFFIRMED**.

---

KOZINSKI, Circuit Judge, dissenting in part:

Joel Leon Thomas, Jr., barely 24 years old when he was sentenced, will be 73 when he gets out of prison. How did a young man get half a century following a conviction for three bank robberies—two of which he wasn't present for and none of which resulted in physical harm? The answer is as troubling as it is simple: The district judge misunderstood the scope of his discretion and therefore failed to impose a sentence that is substantively reasonable.

The record leaves no doubt that the district judge believed he lacked discretion to reduce Thomas's sentence. This is what he said:

> When all of these are added together, it is a total sentence of 49 and a half years. My opinion is that is too much. *I wouldn't impose that sentence if I had the discretion. But I don't.*

That is just plain wrong, as the majority holds: "[T]he district court had the discretion to impose a lower sentence." Maj. Op. at 16. The majority reads the district judge's statement that he didn't "feel comfortable" reducing the sentence as contradicting his express statement that he lacks discretion. Maj. Op. at 13. But the two statements aren't inconsistent: The district judge may have felt uncomfortable reducing Thomas's sentence because he believed he lacked discretion to do so. The judge's statements, taken together, show pretty clearly that he misunderstood his authority, and "the appropriate remedy is a remand to exercise [his] discretion." *United States* v. *Khoury*, 62 F.3d 1138, 1141 (9th Cir. 1995).

The sentencing judge had no discretion to reduce the mandatory minimums, but he did have discretion as to the Guidelines portion of the sentence. *United States* v. *Booker*, 543 U.S. 220, 245 (2005). So this isn't a case where mandatory minimums made it "impossible for the judge to impose a total sentence that the court considers reasonable." Maj. Op. at 15 (quoting *United States* v. *Washington*, 462 F.3d 1124, 1140 (9th Cir. 2006)). The district judge could have imposed a Guidelines sentence as low as zero months in order to arrive at a substantively reasonable aggregate sentence. *See United States* v. *Dare*, 425 F.3d 634,

638, 643 (9th Cir. 2005) (affirming an aggregate sentence of 10 years where the district court imposed a zero-month sentence for marijuana possession to minimize the impact of an "outrageous" mandatory minimum).

Not only *may* a sentencing judge consider the impact of mandatory minimums, he *must* do so to ensure that the aggregate sentence imposed is substantively reasonable. The district judge didn't "feel comfortable reducing the [Guidelines] sentence . . . to sort of balance it all out because [he thought 17.5 years was] the right sentence for three bank robberies and three conspiracies to commit bank robberies." A 17.5 year sentence may be appropriate if the defendant starts serving it today but inappropriate if he starts serving it three decades from now. The judge must consider whether imposing that sentence on someone who has just spent 32 years in prison would serve *any* of the goals of section 3553(a). Will it deter? Will it rehabilitate? Is it really the lowest sentence that can achieve these purposes? You will get the wrong answers to these questions if you treat the two parts of the sentence—the mandatory minimum portion and the Guidelines portion—as independent and unrelated. The district judge mistakenly believed he was required to calculate the Guidelines portion of the sentence as if it were a stand-alone sentence, rather than as one component of a combined sentence. There is, at the very least, a serious risk that the district judge meant what he said: He imposed a 49.5 year sentence because he believed he had no discretion. This is a major procedural error that requires reversal.

The sentence is also substantively unreasonable. "A substantively reasonable sentence is one that is 'sufficient, but not greater than necessary' to accomplish § 3553(a)(2)'s sentencing goals." *United States* v. *Crowe*, 563 F.3d 969, 977

n.16 (9th Cir. 2009) (quoting 18 U.S.C. § 3553(a)). Thomas's sentence "fails properly to reflect § 3553(a) considerations." *United States* v. *Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009) (citing *Rita* v. *United States*, 551 U.S. 338, 351 (2007)). Consider "the nature and circumstances of the offense": Thomas was only present for one of the three bank robberies. *See* 18 U.S.C. § 3553(a). Although this was an armed robbery, Thomas wasn't the one holding the gun. The other bank robberies—neither of which Thomas was actually present for—resulted in stolen proceeds that didn't exactly break the bank: $1,678 and $7,191. And none of the bank robberies resulted in physical harm to bank employees or customers. Or consider "the history and characteristics of the defendant": Thomas's only prior conviction was a 2009 misdemeanor for loud noise. *Id.* The district judge summed it up best: Thomas's criminal history is "very limited." The "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" also weighs in Thomas's favor given that his co-defendants—all of whom actively participated in the robberies to a greater extent than Thomas—received lesser sentences. *Id.* Indeed, Thomas got a dozen years more than Ahmed Ressam, who plotted to "blow up LAX, [which] would have resulted in many deaths and injuries, substantial property damage and enormous disruption to the nation's transportation system." *See United States* v. *Ressam*, 679 F.3d 1069, 1090 & Dist. Ct. Dkt. No. 458 (9th Cir. 2012) (en banc).

Thomas's 49.5 year sentence is far "greater than necessary" to accomplish section 3553(a)'s goals. I would remand so that the district judge may exercise his discretion and impose a substantively reasonable sentence.